**U.S. WEST COMMUNICATIONS, INC., Appellee,**

v.

**Frances W. OVERHOLSER, Appellant.**

No. 96–795.

Supreme Court of Iowa.

July 23, 1997.

Channing L. Dutton of Lawyer, Lawyer, Dutton & Drake, West Des Moines, for Appellant.

Sara J. Sersland of Nyemaster, Goode, McLaughlin, Voigts, West, Hansel & O'Brien, P.C., Des Moines, for Appellee.

Considered by LARSON, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

SNELL, Justice.

Frances Overholser appeals the decision of the district court, which reversed the industrial commissioner's decision to reopen her 1991 workers' compensation settlement agreement. We affirm.

## I. Background Facts and Proceedings

Frances Overholser began working for U.S. West Communications, Inc. in August 1984. On October 29, 1987, she sustained an injury to her back, arising out of and in the course of her employment. She missed one day of work following the injury and continued to work at the same position until 1989. In 1989, she transferred to a different position at U.S. West that did not require repetitive use of her upper extremities, as recommended by treatment prescribed for another injury unrelated to this action. This position was less strenuous and paid approximately thirty-five percent more than her original position. Frances continued to work without restriction relating to her back injury.

On December 6, 1991, Frances and U.S. West entered into an agreement for settlement, pursuant to section 86.13 of the Iowa Code (1989). The approved agreement provided that Frances sustained a permanent partial disability of five percent to the body as a whole, and she received twenty-five weeks of permanent partial disability benefits.

In July 1993, Frances was among seventy-two employees laid off by U.S. West as a result of downsizing within her department. The layoffs were made pursuant to the union contract and Frances' relative lack of seniority as compared to her co-workers necessitated that she lose her job. At the time of the layoff, Frances elected to receive an "involuntary layoff," which reduced her severance pay by fifty percent, but allowed her to be recalled to employment elsewhere with U.S. West as appropriate positions became available. Frances repeatedly attempted to obtain another position with U.S. West, but she did not have sufficient qualifications or seniority to be recalled.

In October 1993, Frances filed a petition to reopen the settlement agreement, seeking additional benefits because of her layoff. The parties agreed, however, that her medical condition had not changed since the settlement. The deputy industrial commissioner concluded that U.S. West accommodated Frances with a well-paying position and, given her skills and education, such accommodation "had to have been a very big factor" in the settlement for the five percent industrial disability. The deputy determined Frances sustained an additional thirty percent loss of earning capacity since the settlement date, due to "a substantial change in [her] economical situation and not as a result of any physical change." He awarded her 150 weeks of permanent partial disability benefits. The industrial commissioner affirmed the award, and found the "award contained in the settlement contemplated [Frances'] ongoing employment." It reasoned that because U.S. West is no longer accommodating her injury, it is "required to pay all the disability caused by the original injury at the time of the settlement."

U.S. West appealed the determination of the industrial commissioner to the district court. On review, the court reversed the decision of the industrial commissioner, con-

cluding that he inappropriately revisited and rewrote the 1991 settlement by finding its terms were contingent on Frances' continued employment with U.S. West. It is from this decision that Frances appeals.

## II. Standard of Review

We review district court decisions regarding the validity of agency actions for correction of errors at law. *Miedema v. Dial Corp.*, 551 N.W.2d 309, 310 (Iowa 1996); *Norland v. Department of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987). The district court is charged with determining whether there is substantial evidence in the record to support the commissioner's decision. *Miedema*, 551 N.W.2d at 310. Evidence is substantial if a reasonable person would find it adequate to reach a conclusion. *Armstrong v. Iowa Bldgs. & Grounds*, 382 N.W.2d 161, 166 (Iowa 1986). In reviewing the determination of the district court, we apply Iowa Code section 17A.19(8) (1995) to determine whether our conclusions are the same as those of the district court. *Miedema*, 551 N.W.2d at 310.

## III. Issues on Appeal

Frances appeals the decision of the district court, which reversed the decision of the industrial commissioner to reopen the 1991 settlement agreement. Reopening proceedings are governed by Iowa Code section 86.14(2), which states:

> In a proceeding to reopen an award for payments or agreement for settlement as provided by section 86.13, inquiry shall be into whether or not the condition of the employee warrants an end to, diminishment of, or increase of compensation so awarded or agreed upon.

Iowa Code § 86.14(2).

We have summarized the methodology of a review-reopening procedure under section 86.14 as follows:

> The claimant carries the burden of establishing by a preponderance of evidence that, subsequent to the date of the award under review, he or she has suffered an impairment or lessening of earning capacity proximately caused by the original injury. *Blacksmith v. All–American, Inc.*, 290 N.W.2d 348, 350 (Iowa 1980); *Deaver v. Armstrong Rubber Co.*, 170 N.W.2d 455, 457 (Iowa 1969).
>
> The necessary showing in a review-reopening proceeding may be made without proof of change in physical condition. *Blacksmith*, 290 N.W.2d at 350, 3A Larson, *The Law of Workmen's Compensation* § 81.31(e), at 15–1030 (1989). That is because industrial disability is the product of many factors, only one of which is functional disability stemming from the physical injury. *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 192 (Iowa 1980). Other factors include age, education, experience, and "inability, because of the injury, to engage in employment for which [the employee] is fitted." *Id.* (quoting *Olson v. Goodyear Serv. Stores*, 255 Iowa 1112, 1121, 125 N.W.2d 251, 257 (1963)).

*Gallardo v. Firestone Tire & Rubber Co.*, 482 N.W.2d 393, 395–96 (Iowa 1992).

Frances claims that her 1993 layoff was a substantial change in her employment condition not contemplated by the parties in their initial 1991 settlement. She contends, and the industrial commissioner found, that even though her physical condition has not changed since the settlement, her economic situation has, thus justifying a modification of the settlement agreement. On review, however, the district court found that there was no causal nexus between her back injury and the decrease in her earning capacity. Rather, the court noted her layoff was due solely to lack of seniority, not due to her original back injury. We agree with this determination.

### A. Accommodation

In its appeal decision, the industrial commissioner stated that the 1991 settlement reflected U.S. West's accommodation of Frances' disability and that once accommoda-

tion ceased to exist after her layoff, Frances is "now suffering ... additional disability as a result of her layoff status." Accordingly, the commissioner awarded her an additional thirty percent loss of earning capacity.

■ We note that when a settlement is reached in a workers' compensation case, the injured's loss of earning capacity is properly viewed "in terms of the injured worker's present ability to earn in the competitive job market without regard to the accommodation furnished by one's present employer." *Thilges v. Snap–On Tools Corp.*, 528 N.W.2d 614, 617 (Iowa 1995). Accordingly, the disability award must not be adjusted downward because the worker is receiving sheltered employment or merely because the employer modifies its job requirements in light of an employee's disability. As the North Carolina Supreme Court has stated:

> an injured employee's earning capacity must be measured not by the largesse of a particular employer, but rather by the employee's own ability to compete in the labor market. If post-injury earnings do not reflect this ability to compete with others for wages, they are not a proper measure of earning capacity.

*Peoples v. Cone Mills Corp.*, 316 N.C. 426, 342 S.E.2d 798, 805–06 (1986); *see also* 4 Arthur Larson, *Larson's Workers' Compensation Law* § 57.34, at 10–239 to 10–245 (1997). Frances argues that the five percent disability rating does not properly measure her true earning capacity, based upon the facts stated above. The question, then, is whether the five percent disability rating is artificially low and contingent upon Frances' continued employment with U.S. West. We believe it was not.

Frances admits that her physical condition has not worsened, nor was it a factor in U.S. West's decision to terminate her employment. Instead, she contends that a rewriting of the settlement agreement is warranted solely because she has suffered a change in her economic condition subsequent to the 1991 settlement agreement. In support of this claim, Frances cites our decision in *Gal-*

*lardo.* In *Gallardo*, the claimant suffered a compensable injury and settled with the employer, but his condition steadily worsened and he subsequently sought a reopening of the settlement agreement, seeking additional compensation that would fully reflect the severity of his industrial disability. *Gallardo*, 482 N.W.2d at 395. In the first review-reopening proceeding, the industrial commissioner determined his industrial disability was fifty percent, but reduced it to forty percent because of "Firestone's professed willingness to accommodate him." *Id.* at 396. However, the accommodation did not materialize because three weeks later Gallardo was unable to complete his work due to his injury. *Id.* Thereafter, Firestone authorized fifty-two weeks of disability payments, and then approved his medical retirement status. *Id.* at 397.

Gallardo sought a second reopening, but the district court affirmed the commissioner's decision that neither Gallardo's physical condition nor his earning capacity had changed. *Id.* at 395. We reversed, finding that Gallardo was entitled to a modification of the original award because the severity of Gallardo's original injury was not properly reflected in the original settlement agreement. *Id.* at 396. Crucial to this finding was the following:

> The commissioner's ruling in the first review-reopening proceeding made it plain that, but for evidence of Firestone's willingness to continue Gallardo's employment, he would be entitled to an industrial disability rating of fifty percent. Because of Firestone's professed willingness to accommodate him, the disability rating was adjusted downward ten percent. Later events reveal, however, that the accommodation was not forthcoming.

*Id.*

Here, there is no evidence that Frances' disability rating was "adjusted downward" because of accommodation by U.S. West. After her initial injury, Frances' conditions of employment were unchanged. In fact, she was able to perform her same job and duties

despite her five percent disability rating. She remained at that same position until well after the time of her injury and only transferred from it when she suffered a nonrelated impairment to her upper extremities. Unlike *Gallardo,* Frances' physical condition did not deteriorate after the settlement. There is no evidence in the record that the five percent permanent disability rating awarded in the 1991 settlement agreement was a distortion of Frances' true earning capacity.

Likewise, we are not convinced that U.S. West actually accommodated her original injury. Accommodation, if any actually existed, only occurred after Frances was subsequently injured in another incident unrelated to this appeal. The record does not support the contention that her work was modified in any way to accommodate her injury or that she received sheltered employment which distorted her true earning capacity.

B. Causation

On review, the district court correctly focused its analysis on "the condition of the employee," as required by section 86.14(2) of the Code, and properly determined that Frances' earning capacity remained unchanged as it relates to her original back injury. The only change in Frances' condition between the time of the settlement and her appeal was her termination pursuant to the layoff. Significantly, the deputy commissioner noted in his decision that Frances "has not been refused employment or has not been able to obtain a job because of her physical condition...."

■ Frances' physical condition remained unchanged and her earning capacity decreased solely because of factors outside of the settlement with U.S. West, including her subsequent injuries, the downsizing by U.S. West, her lack of seniority, and her job seeking skills. Her inability to secure employment after the layoff was not due to her back injury, but to other factors not at issue in this case. Frances has failed to prove by a preponderance of evidence that her de-creased earning capacity was proximately caused by her initial injury. *See Blacksmith,* 290 N.W.2d at 350. The district court correctly reversed the decision of the industrial commissioner to reopen the 1991 settlement agreement.

**AFFIRMED.**