Nancy SIMONSON, Appellant,

v.

**SNAP–ON TOOLS CORPORATION and Royal Insurance Company, Appellees.**

No. 97–1150.

Supreme Court of Iowa.

Jan. 21, 1999.

Rehearing Denied March 12, 1999.

Mark S. Soldat, Algona, for appellant.

Paul C. Thune and Michael S. Roling of Peddicord, Wharton, Thune & Spencer, P.C., Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL and TERNUS, JJ.

McGIVERIN, Chief Justice.

Two questions are presented here. One involves whether substantial evidence supports denial by the industrial commissioner of additional workers' compensation benefits to petitioner in a review-reopening proceeding concerning petitioners 1985–1987 injuries. The other question is whether the commissioner should rule on the merits of petitioners claim for penalty benefits due to alleged delay by the employer in paying compensation benefits.

We affirm the district court's rulings that upheld the commissioner on the first question but reversed on the second and ordered the commissioner to decide petitioner's claim for penalties under Iowa Code section 86.13 (1991) on its merits.

## I. Background facts and proceedings.

Petitioner Nancy Simonson was employed by Snap–On Tools from 1979 until June 23, 1988. During her employment, Simonson sustained work-related injuries to her back, neck, shoulder, and right leg. These injuries occurred on July 5, 1985, November 6, 1986, and April 27, 1987. Snap–On voluntarily paid Simonson weekly benefits for these injuries. As a result of her injuries, Simonson was limited in the type of duties she could perform.

Snap–On eventually discharged Simonson on June 23, 1988, based on its conclusion that it had no job within her physical limitations in which she might be successful. After her discharge, Simonson made attempts to find other work, but her ability to perform certain physical tasks such as lifting continued to be limited.

### A. Petitioner's original petition for compensation benefits.

On December 29, 1988, Simonson filed three arbitration petitions with the industrial commissioner seeking workers' compensation benefits for injuries she sustained in her employment with Snap–On Tools. Addition-

ally, Simonson requested penalty benefits pursuant to Iowa Code section 86.13 for Snap–On's alleged delay in payment of benefits.

An evidentiary hearing on the petitions was held April 10, 1990. Thereafter, the deputy industrial commissioner ordered Snap–On to pay Simonson 175 weeks of permanent partial disability benefits commencing May 26, 1988. The deputy made no award, or mention, of penalty benefits allowable under Iowa Code section 86.13. Simonson appealed the deputy's decision to the industrial commissioner.

On March 6, 1991, during the time that her arbitration appeal was pending before the commissioner, Simonson filed a petition with the commissioner seeking penalties for Snap–On's alleged delay in paying compensation benefits *since* the April 10, 1990 hearing.

On October 31, 1991, the commissioner issued a ruling concerning Simonson's arbitration petitions based on the record of the April 10, 1990 hearing. The commissioner affirmed the deputy's decision and awarded Simonson an industrial disability award of thirty-five percent and 175 weeks of permanent partial disability benefits. The commissioner also ordered Snap–On to pay Simonson 42.714 weeks of healing period benefits. These awards were based on a prediction that Simonson would lose thirty-five percent of her earning capacity from her work-related injuries. Also, the commissioner awarded no penalty benefits for the period up to April 10, 1990, based on his conclusion that Simonson's penalty claim was fairly debatable.

Simonson then filed a petition for judicial review in district court, seeking review of the commissioner's October 31 ruling concerning the claims raised in Simonson's arbitration petitions.

In its ruling, the district court (Judge Straub) affirmed in part and reversed in part the decision of the industrial commissioner as to Simonson's disability award. The court also affirmed the commissioner's ruling denying Simonson's claim for penalties under Iowa Code section 86.13 for alleged delay in benefit payments up to April 10, 1990.

Simonson then appealed the district court's judicial review decision to our court. We transferred the case to the court of appeals.

In its ruling issued June 29, 1993, the court of appeals reversed the decision of the district court and in effect affirmed the commissioner's decision as to all issues, except that the court remanded the case to the commissioner "for the limited purpose of determining partial disability under [Iowa Code section] 85.33(4) for the weekend days of August 15 and 16, 1987." *Simonson v. Snap-On Tools Corp.*, 513 N.W.2d 423 (Iowa App.1993) (Table).

Upon remand, the industrial commissioner ordered Snap-On to pay Simonson temporary partial disability benefits for August 15 and 16, 1987.

## B. Petitioner's review-reopening petition.

On February 21, 1994, Simonson filed a review-reopening petition with the industrial commissioner seeking an increase in the thirty-five percent industrial disability award and for interest and costs. *See* Iowa Code § 86.14(2).

On September 29, 1995, a hearing was held before the deputy industrial commissioner concerning Simonson's review-reopening claim and her petition of March 6, 1991 for penalties for delay in payments since April 10, 1990. The deputy concluded that Simonson was not entitled to additional permanent disability payments and, without ruling on the merits of the claim, that Simonson was not entitled to penalty benefits under Iowa Code section 86.13.

Simonson then appealed to the industrial commissioner. In a ruling issued December 31, 1996, the industrial commissioner agreed with the deputy's decision that Simonson had failed to present adequate evidence showing a physical or nonphysical change in condition or earning capacity caused by her work-related injury and that Simonson thus was not entitled to additional workers' compensation benefits on review-reopening.

The commissioner also concluded that Simonson was not entitled to penalty benefits for any alleged delay in payment of benefits by Snap-On. The commissioner believed that Simonson's current claim for penalty benefits, as articulated in her March 6, 1991 petition, was the same as her prior claim for penalty benefits asserted in her arbitration petitions, which had already been adjudicated in favor of Snap-On. The commissioner therefore concluded that Simonson's claim for penalty benefits as alleged in her March 6, 1991 petition was barred either by issue or claim preclusion.

The commissioner also concluded that, even if Simonson's current claim for penalty benefits was not barred by issue or claim preclusion, the commissioner did not have jurisdiction to consider the claim for penalty benefits. The commissioner noted that the June 23, 1993 decision of the court of appeals remanded that case to the industrial commissioner "for the limited purpose of determining partial disability under [section] 85.33(4) for the weekend days of August 15 and 16, 1987." Based on this statement, the commissioner believed she did not have authority to consider Simonson's claim for penalty benefits.

As a final basis for the decision, the commissioner stated that the proper means for enforcement of Simonson's award is found in Iowa Code section 86.42 which allows a claimant to enforce a commissioner's decision by obtaining a judgment in district court.

Thereafter, Simonson filed a petition for judicial review in district court.

In its ruling, the district court (Judge Duffy) affirmed the decision of the industrial commissioner concerning Simonson's review-reopening claim. The court concluded that there was substantial evidence in the record supporting the commissioner's conclusion that "no change of earning capacity due to the work injury was shown" and that there had been no change in Simonson's physical condition.

With respect to Simonson's claim for penalty benefits pursuant to Iowa Code section 86.13, the district court concluded that the industrial commissioner erred in deciding that Simonson's claim for penalties was barred under either issue or claim preclusion. The court also determined that Simonson's

current claim for penalties, as articulated in her March 6, 1991 petition, related to the delay in payments· by Snap–On since the April 10, 1990 hearing. Thus, the court reasoned that the court of appeals decision concerning penalties only related to delay in payments before the April 10, 1990 hearing. The court therefore concluded that Simonson's current claim for penalties was not barred by either issue or claim preclusion.

Additionally, the district court concluded that the industrial commissioner's authority to consider Simonson's current claim for penalty benefits was in no way limited by the court of appeals decision. The district court noted that the court of· appeals decision pertained to events separate and distinct from Simonson's current claim for penalty benefits and thus the commissioner had original jurisdiction to consider the penalty benefit issues presented in the March 6, 1991 petition. Based on these findings, the district court reversed the commissioner's ruling on the penalty claim issue and remanded the case to the commissioner for purposes of addressing the merits of the penalty claim because the merits had not previously been adjudicated by the commissioner.

Petitioner Simonson appeals, asserting that the district court erred in affirming the commissioner's decision denying her review-reopening claim for additional workers' compensation benefits. *See* Iowa Code § 17A.20. Respondents Snap–On and its insurer, Royal Insurance Company, cross-appeal from the district court's decision that Simonson is entitled to a ruling by the commissioner on the merits of her claim for penalties pursuant to Iowa Code section 86.13 concerning Snap–On's alleged delay in benefits payments since April 10, 1990.

## II.  Standard of review.

■ Our review of an industrial commissioner's decision is governed by Iowa Code chapter 17A. *See* Iowa Code § 86.26. In such cases, we review for correction of errors at law. *McCormick v. North Star Foods, Inc.,* 533 N.W.2d 196, 198 (Iowa 1995). The industrial commissioner's conclusions of law are binding on us if supported by substantial evidence when the record is viewed as a whole. *See* Iowa Code § 17A.19(8)(f); *accord E.N.T. Assocs. v. Collentine,* 525 N.W.2d 827, 829 (Iowa 1994). Evidence is substantial if a reasonable person would find it adequate to reach a conclusion. *U.S. West Communications, Inc. v. Overholser,* 566 N.W.2d 873, 875 (Iowa 1997).

## III.  Did the district court properly decide that petitioner was not entitled to additional workers' compensation benefits based on her review-reopening claim?

On the appeal, Simonson contends that the district court erred in affirming the industrial commissioner's decision that she is not entitled to additional workers' compensation benefits based on her review-reopening claim.

### A.  Applicable law regarding review-reopening claim.

Review-reopening· proceedings are governed by Iowa Code section 86.14(2) which states:

> In a proceeding to reopen· an award for payments or agreement for settlement as provided by section 86.13, inquiry shall be into whether or not the condition of the employee warrants an end to, diminishment of, or increase of compensation so awarded or agreed upon.

Section 86.14(2) thus establishes a procedure for determining whether a change in the employee's .employment condition warrants an increase in compensation benefits previously awarded. *See Blacksmith v. All–American, Inc.,* 290 N.W.2d 348, 350 (Iowa 1980).

■ To justify an increase in compensation benefits, "[t]he claimant carries the burden of establishing by a preponderance of the evidence that, subsequent to the date of the award under review, he or she has suffered an *impairment or lessening of earning capacity proximately caused by the original injury.*" *Collentine,* 525 N.W.2d at 829 (emphasis added).

■ We have stated on several occasions that industrial disability is the product of many factors, not just physical impairment. *See Overholser,* 566 N.W.2d at 875;

*Collentine,* 525 N.W.2d at 829; *McSpadden v. Big Ben Coal Co.,* 288 N.W.2d 181, 192 (Iowa 1980). Thus, we have recognized that a necessary showing in a review-reopening proceeding, i.e., lessening of earning capacity, may be made without proof of change in physical condition. *See Overholser,* 566 N.W.2d at 875; *Collentine,* 525 N.W.2d at 829. Other factors which bear on the determination of industrial disability include age, education, experience, and inability, because of an injury, to engage in employment for which the employee is fitted. *Collentine,* 525 N.W.2d at 829. Additionally, compensation may be increased when an increase in industrial disability results from a failure of a diagnosed physical condition to improve to the extent anticipated. *See Blacksmith,* 290 N.W.2d at 350 (citing *Meyers v. Holiday Inn of Cedar Falls,* 272 N.W.2d 24, 26 (Iowa App.1978)).

Thus, the decisive issue in a review-reopening case such as the present one is whether substantial evidence in the record supports the commissioner's conclusion that there was no change in Simonson's *earning capacity* due to a work-related injury since entry of the original award in 1991.

**B. Analysis.**

■ We first point out that Simonson's claim for increase in compensation benefits is not based on a change in physical condition. Rather, Simonson claims she is entitled to an increase in compensation benefits based on a change in economic conditions that was not contemplated at the time of the commissioner's original award.

Specifically, Simonson contends that an economic change has occurred in that circumstances beyond her control have interfered with her ability to retrain, thus causing a decrease in earning capacity. Simonson points to the fact that she was forced to close the bar that she was operating because the business was not profitable, that she was forced to quit college to assist her daughter in caring for newborn twins, and that she and her husband were making payments on two homes for approximately one year and eventually sold one of the homes at a loss. She contends that these events interfered with the vocational retraining which was necessary after her work-related injury and upon which the commissioner's thirty-five percent disability award was based. As a result, Simonson suggests that her actual earnings are less than sixty-five percent of the amount she would have been making at Snap–On. Simonson thus asserts that her reduction in earnings qualifies as a change in economic condition entitling her to an increase in workers' compensation benefits from Snap–On.

Upon our review, we believe that the commissioner adequately considered all relevant factors and further agree with the commissioner's decision that Simonson failed to show she sustained an economic change of condition since the original award such as to justify an increase in compensation benefits.

We first note that Simonson's ability to retrain for purposes of finding a position comparable to what she would have been earning at Snap–On was affected by her decision to care for her grandchildren rather than complete college. That decision, however, was a personal one and was wholly unrelated to her work injury. Not surprisingly, this decision resulted in a reduction in Simonson's earnings. Simonson's financial stability was further impacted by attempts to sell her home and the unprofitable bar business; factors unrelated to her original work injury.

■ A self-imposed reduction in earnings, however, does not mean that Simonson likewise sustained a reduction in earning capacity proximately caused by her original injury. The fact that Simonson secured various waitress jobs following her separation from Snap–On, the type of job contemplated by the commissioner that she could do, supports a finding that her earning capacity has not changed since entry of the original award.

Thus, while it is true that Simonson has sustained a reduction in earnings since her separation from Snap–On, that reduction in earnings is in substantial part the result of personal decisions and not proximately caused by her original work-related injury. Moreover, the fact that a voluntary separation from employment was not contemplated

by the commissioner at the time of the original award does not give rise to an economic change in employment when the reasons for the separation are personal and unrelated to the original injury.

Simonson presented no evidence that she has sustained an impairment or lessening of earning capacity proximately caused by the original injury to justify an increase in award benefits. The commissioner's conclusion that there was no change in Simonson's earning capacity due to a work-related injury since entry of the 1991 award is supported by substantial evidence in the record. Cf. *Overholser*, 566 N.W.2d at 877 (employee failed to prove decreased earning capacity was proximately caused by initial injury).

Accordingly, we affirm the judgment of the district court that upheld the commissioner's ruling concerning petitioner Simonson's review-reopening claim.

**IV. Did the district court properly conclude that petitioner was entitled to a ruling on the merits concerning her claim for penalty benefits pursuant to Iowa Code section 86.13?**

■ On the cross-appeal, respondents Snap–On Tools and its insurer assert that the district court erred in reversing the commissioner's dismissal of Simonson's 1991 petition for penalty benefits pursuant to Iowa Code section 86.13. Snap–On's argument is based on the following:

(1) the issue of penalties had been previously adjudicated and is therefore barred under the doctrine of res judicata;

(2) the industrial commissioner did not have jurisdiction to award penalties in this case;

(3) the proper avenue for the enforcement of a workers' compensation award is under Iowa Code section 86.42; and

(4) the record does not support an award of penalties.

Iowa Code section 86.13 states in part:

If a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the industrial commissioner shall award benefits in addition to those benefits payable under this chapter, or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were unreasonably delayed or denied.

In *Meyers v. Holiday Express Corp.*, 557 N.W.2d 502, 504–05 (Iowa 1996), we articulated certain principles which can be gleaned from the language of section 86.13 and our prior cases interpreting that section.

A. Upon our review of the record, we conclude that the district court properly determined that Simonson's current claim for penalty benefits under section 86.13 was not barred by res judicata.

Simonson first made a claim for penalty benefits under section 86.13 in her arbitration petitions which were filed in December 1988. A hearing concerning the petitions was held April 10, 1990. Thus, that claim by petitioner for penalty benefits related to alleged delay in compensation payments prior to April 10, 1990. The deputy commissioner's decision, issued on January 31, 1991, was therefore based on the evidentiary record made at the April 10, 1990 hearing. Therefore, the subsequent decisions by the commissioner and district court and the court of appeals decision of June 29, 1993, only covered alleged delay in payments for the period of time up to April 10, 1990.

Simonson made a second claim for penalty benefits in her petition filed March 6, 1991. The industrial commissioner's original notice and petition form expressly notes that the dispute concerns Snap–On's "[d]elay in the payment of compensation *since* April 10, 1990." Despite this fact, the deputy and industrial commissioner assumed that Simonson's March 6, 1991 claim for penalties covered the same benefits period as her prior claim asserted in the arbitration petitions. The deputy and industrial commissioner were incorrect in making this assumption because the record shows that Simonson's claims for penalty benefits under section 86.13 cover two distinct periods of time: from date of last injury up to April 10, 1990, and from April 10, 1990 to September 29, 1995, the most recent evidentiary hearing before the deputy.

B. We further conclude that the district court properly determined that the jurisdiction of the industrial commissioner was in no way limited by the 1993 decision of the court of appeals. As stated above, the evidentiary record concerning penalties for delay in payments, as it existed at the time of the court of appeals decision, only covered the period of time up to April 10, 1990. Accordingly, nothing in the court of appeals decision concerning benefits for the period prior to April 10, 1990 limited Simonson's right to pursue a subsequent claim for delay in benefits during a later different period of time, or the commissioner's jurisdiction to consider such a claim. We therefore reject Snap-On's assertion that the commissioner did not have jurisdiction to consider Simonson's current claim for penalty benefits.

C. Finally, we disagree with Snap-On's assertion that Iowa Code section 86.42 is the only remedy for enforcement of an award. We do not believe that section 86.13 and section 86.42 are mutually exclusive. Thus, an employee may pursue a claim for penalty benefits for delay in payment of benefits pursuant to section 86.13. Also, a petitioner may seek to enforce an award pursuant to section 86.42 by obtaining a judgment in district court based on the commissioner's award of benefits. The petitioner may pursue both remedies.

Because there has been no adjudication on the merits by the commissioner concerning whether Simonson is entitled to penalty benefits for delay in payment of compensation benefits *after* April 10, 1991, we have nothing further to review on the penalty issue. We agree with the district court that the case must be remanded to the commissioner for determination on the merits of whether Simonson is entitled to penalty benefits pursuant to section 86.13 for alleged delay in benefit payments made *after* April 10, 1990.

## V. Disposition.

We conclude that substantial evidence supports the commissioner's decision that petitioner Nancy Simonson is not entitled to additional workers' compensation benefits based on her review-reopening petition. We further conclude that the district court prop-erly reversed the commissioner and remanded the case to the industrial commissioner for determination on the merits of Simonson's claim for penalty benefits under Iowa Code section 86.13 concerning alleged delay in compensation payments by Snap-On *since* April 10, 1990. This determination should be made on the existing record and such additional record as the commissioner may deem appropriate. We affirm the judgment of the district court.

**AFFIRMED ON BOTH APPEALS.**