ACUITY INSURANCE, f/k/a Heritage Mutual Insurance Company, and Foreman Electric & Hardware, Appellants,

v.

Darrell FOREMAN, Appellee.

No. 02–1350.

Supreme Court of Iowa.

July 21, 2004.

Joseph A. Quinn of Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellants.

Steven C. Jayne, Des Moines, for appellee.

TERNUS, Justice.

The Iowa workers' compensation commissioner awarded the appellee, Darrell Foreman, permanent and total disability benefits in this review-reopening proceeding. The district court affirmed the award on judicial review, but the court of appeals, in a split decision, reversed. The court of appeals held that while there was substantial evidence to support a finding that Foreman's industrial disability had increased since the original award of benefits, there was not substantial evidence supporting the degree of disability determined by the commissioner. Consequently, the court of appeals remanded the case for a new assessment of industrial disability.

We granted Foreman's request for further review. Concluding there is substantial evidence in the record to support the agency's decision, we affirm.

I. *Background Facts and Proceedings.*

Darrell Foreman is the owner and president of appellant, Foreman Electric & Hardware, an electrical and plumbing contracting business. He has been employed by this business since 1969. A high school graduate, Foreman worked almost exclusively as a laborer prior to his on-the-job injury. At the time of the hearing on this matter, he was sixty years old.

In October 1987 Foreman fell from a ladder while working, injuring his back, fracturing his left hip, and injuring his left knee. After two hip surgeries, he was released to light duty in January 1989. At that time he still had significant, intermittent symptoms involving the injured areas, as well as some discomfort in his right hip. A 1989 functional assessment showed a twenty-seven percent functional impairment to the body as a whole. Foreman's medical team determined Foreman would never be able to do more than light work and he would be permanently restricted to lifting no more than 20–30 pounds maximum, and 10–15 pounds frequently. The claimant's treating physician said the symptoms on Foreman's left side and back were permanent and would worsen over time, eventually requiring a left hip replacement and perhaps left knee surgery.

Foreman sought workers' compensation benefits from his employer and its insurer, appellant, Acuity Insurance Company. (We will refer to the employer and its insurance carrier jointly as the employer in the remainder of this opinion.) The only disputed issue was the rate of compensation, as the parties stipulated that Foreman had sustained a sixty-percent industrial disability. The parties specified in the stipulation submitted to the commissioner the following factual bases for their agreement with respect to industrial disability: (1) "the claimant's medical condition will remain substantially stable"; (2) the claimant's business was presently economically unstable; (3) the "future

business condition could improve or deteriorate or result in the closing of the business"; and (4) due to "the continued economic instability of claimant's business, claimant may in the future need or want to seek new employment[,] the prospects for which are uncertain." The commissioner accepted this stipulation and then determined benefits were payable at a rate of $108.67 per week.

In July 1997 this review-reopening proceeding was commenced. Foreman alleged there had been a change in his condition resulting in an increase in his industrial disability. A deputy workers' compensation commissioner issued a decision in May 2001, finding current problems with Foreman's right knee and hip were not contemplated at the time of the original decision and, more specifically, that surgical replacements on the right side were not anticipated. He concluded Foreman was permanently and totally disabled and ordered the employer to continue paying benefits as long as Foremen remained so disabled. This ruling was adopted as the final agency decision.

On judicial review, the district court affirmed, finding substantial evidence in the record to support the agency's decision. The employer's appeal was transferred to the court of appeals, where the district court judgment was reversed. Although the court found substantial evidence to support the commissioner's finding of a change in condition not contemplated at the time of the original decision, it concluded there was not substantial evidence to support the agency finding that Foreman was permanently and totally disabled.

Foreman sought further review, claiming error in the court of appeals' ruling on the degree-of-disability issue. The employer resisted further review, but asked, in the event the claimant's application was granted, that we also address the change-in-condition issue. Therefore, we will consider both matters. Additional facts pertinent to our consideration of this appeal will be reviewed in our discussion of these issues.

## II. Scope of Review.

Our review is governed by Iowa's Administrative Procedure Act, Iowa Code chapter 17A (2001). See Wal–Mart Stores, Inc. v. Caselman, 657 N.W.2d 493, 498 (Iowa 2003). Accordingly, we may grant relief from the commissioner's decision if a party's substantial rights have been prejudiced and the decision is "not supported by substantial evidence in the record before the court when that record is viewed as a whole." Iowa Code § 17A.19(10)(f); see IBP, Inc. v. Harpole, 621 N.W.2d 410, 417 (Iowa 2001). In assessing the record, we consider the record evidence "that detracts from any challenged finding as well as evidence that supports it." Wal–Mart Stores, 657 N.W.2d at 499 (citing Iowa Code § 17A.19(10)(f)(3)). Moreover, "where reasonable minds may differ on the inferences to be drawn from the proven facts and circumstances, the findings of the commissioner in such matters are conclusive." Bousfield v. Sisters of Mercy, 249 Iowa 64, 68, 86 N.W.2d 109, 112 (1957); accord Wal–Mart Stores, 657 N.W.2d at 499.

## III. General Principles Regarding Review–Reopening Proceedings.

Under Iowa Code section 86.14(2), the workers' compensation commissioner has authority to "reopen an award or settlement of workers' compensation benefits to inquire 'whether or not the condition of the employee warrants an end to, diminishment of, or increase of compensation so awarded or agreed upon.'" Gallardo v. Firestone Tire & Rubber Co., 482 N.W.2d 393, 395 (Iowa 1992) (quoting Iowa Code § 86.14(2)). When the employee files a review-reopening proceeding to increase benefits, the employee must estab-

lish by a preponderance of the evidence that "he or she has suffered an impairment or lessening of earning capacity proximately caused by the original injury." *Simonson v. Snap–On Tools Corp.*, 588 N.W.2d 430, 434 (Iowa 1999).

■ Logic dictates that the circumstances giving rise to a decrease in earning capacity must not have been within the contemplation of the decision maker at the time of the original award. That is so because if these circumstances were known or anticipated at the time of the initial award, they would logically be reflected in the original determination of industrial disability. Thus, in a case such as this where the employee claims his earning capacity has decreased as the result of changes in his physical condition occurring after the initial award of benefits, the commissioner must determine (1) whether there has been a change in the worker's condition as a result of the original injury, and (2) whether this change was contemplated by the parties at the time of any settlement or stipulation with respect to industrial disability or whether it was beyond what the commissioner contemplated at the time of the original assessment of industrial disability. If such an unanticipated change has occurred, the commissioner must then determine the extent to which this deterioration has adversely affected the employee's earning capacity. We now discuss these matters in the context of the case before us.

IV. *Was There Substantial Evidence to Support the Commissioner's Finding That Foreman's Physical Condition Had Deteriorated More Than What the Parties Anticipated When They Stipulated to a Sixty–Percent Industrial Disability in 1991?*

■ In the appealed decision, the commissioner made a factual finding that since the original award of benefits in 1991 there had been a shortening of Foreman's left leg and degenerative changes in his left hip and knee. In addition, the commissioner found that "the combination of favoring the left leg as well as its decreased length [had] resulted in an increased force being applied to the right leg over a period of time." This situation had caused degenerative changes in Foreman's right hip and knee. In deciding there had been a change in condition that was not contemplated at the time of the initial award, the commissioner's discussion focused on the deterioration in the claimant's right hip and knee. With respect to these particular problems, the commissioner interpreted a report from Foreman's treating physician as indicating that right hip and knee replacements would be required.

■ In challenging the agency's decision, the employer concedes Foreman's condition has changed since the original award, but claims any change was contemplated at the time of the original hearing. In this regard, the employer relies on 1989 medical reports stating that the claimant's condition would worsen over time. The employer's position on this issue must be rejected as the record unequivocally shows that the parties anticipated *no* substantial change in Foreman's physical state when they stipulated to a sixty-percent industrial disability in 1991. In the written stipulation submitted to the commissioner, the parties stated that "[t]his agreement [as to industrial disability] contemplates that claimant's medical condition *will remain substantially stable.*" (Emphasis added.) The commissioner relied on this stipulation in the original proceeding, addressing only the rate issue in his decision and computing benefits on the basis of a sixty-percent industrial disability. The employ-

er did not challenge the commissioner's implicit adoption of the stipulation at that time and did not appeal the commissioner's decision. It is now too late for the employer to claim that the parties' stipulation was contradicted by the medical evidence available at that time. Because the stipulation specified the foundation for the prior determination of industrial disability and was given effect by the commissioner, the stipulation likewise establishes the baseline for this review-reopening proceeding. That baseline is a substantially stable medical condition.

With this benchmark in mind, we agree with the district court and the court of appeals that the record contains substantial evidence to support the agency's finding that Foreman's medical condition has significantly deteriorated since the 1991 stipulation. Medical evidence established that Foreman's left leg has become shorter, and that the condition of his left and right hips and knees has worsened. In addition, Foreman and his wife testified to the deterioration of his physical condition. They said his back, hips and knees have become progressively worse. Foreman cannot walk, stand, sit, or stay in any one position as long now as he could ten years ago. Foreman's stamina is significantly less and he no longer does any lifting over a few pounds.

The employer disregards the importance of this evidence and instead attacks the agency's observation that surgical replacements would be necessary on Foreman's right side. The employer asserts there is not substantial evidence to support this particular finding. Initially, we note that even if the employer is correct, there are many other changes in Foreman's physical condition found by the commissioner that would support an increase in his compensation. In fact, the commissioner noted in concluding that the claimant had met his burden to prove "a change in medical condition not contemplated at the original arbitration hearing or stipulation between the parties," that Foreman would be "entitled to medical benefits to treat the same, specifically, *but not solely,* the claimant's right knee and hip conditions." (Emphasis added.) The commissioner's failure to list each particular factual finding in the conclusions-of-law section of his decision as support for his conclusion that there had been a change in Foreman's physical condition does not mean this court may not consider these findings in assessing the sufficiency of the evidentiary support for the commissioner's ultimate conclusion. *See Bridgestone/Firestone v. Accordino,* 561 N.W.2d 60, 62 (Iowa 1997) (stating "commissioner need not discuss *every* evidentiary fact . . . so long as the commissioner's analytical process can be followed on appeal"); *see also IBP, Inc. v. Al–Gharib,* 604 N.W.2d 621, 632 (Iowa 2000) (stating court "should broadly and liberally apply [agency's] findings to uphold rather than to defeat the agency's decision"). In addition, the medical report upon which the commissioner relied in determining that surgery would be required on Foreman's right side is admittedly ambiguous. Because contrary inferences can be drawn from the physician's report, we are bound by the inference reached by the agency. *See E.N.T. Assocs. v. Collentine,* 525 N.W.2d 827, 829 (Iowa 1994) (stating commissioner's findings of fact are binding "if reasonable minds can draw different inferences from the evidence"); *see also Van Meter Indus. v. Mason City Human Rights Comm'n,* 675 N.W.2d 503, 506 (Iowa 2004) ("That one may draw a contrary inference from the evidence does not mean the evidence in support of the agency's factual findings is insubstantial.").

In conclusion, we agree with the district court and the court of appeals that there is substantial evidence in the record to support the commissioner's finding that Foreman had proved a change in his condition not contemplated at the time of the original award. We turn, then, to the issue of the impact of this change on Foreman's earning capacity.

V. *Was There Substantial Evidence to Support the Agency's Determination That Foreman Was Permanently and Totally Disabled?*

 Industrial disability is the result of many factors. *Gallardo,* 482 N.W.2d at 395. These factors include functional disability resulting from the employee's physical condition, "age, education, experience, and 'inability, because of the injury, to engage in employment for which [the employee] is fitted.'" *Id.* (citation omitted). Total industrial disability occurs when an injury "wholly disables the employee from performing work that the employee's experience, training, intelligence, and physical capacities would otherwise permit the employee to perform." *Al–Gharib,* 604 N.W.2d at 633. Total disability does not require a state of absolute helplessness. *Id.* The pertinent question is whether "there [are] jobs in the community that the employee can do for which the employee can realistically compete." *Second Injury Fund v. Shank,* 516 N.W.2d 808, 815 (Iowa 1994). With these principles in mind, we turn to the evidence showing the adverse impact of the claimant's deteriorating physical condition on his ability to perform the tasks of his vocation.

Foreman testified that when he first returned to work after his fall, he continued to do physical labor, albeit less than what he had been able to do prior to his injury. In the following years, he has had to change the nature of his business to accommodate his growing physical limitations. The business has invested in large equipment and has changed its focus to larger jobs that can be done with the purchased machinery and with less manual labor. The business now employs others to do the physical work that Foreman previously performed. Currently, the majority of the claimant's time is spent on administrative work: making out bids, picking up materials, and running parts out to the workers. Foreman will occasionally operate a backhoe or skid loader for a short time, but cannot do any other physical labor required in his business. He does not have the stamina to perform even his administrative duties for a full eight-hour work day. In essence Foreman's earnings are attributable to the investment he has made in his company and its equipment rather than to the labor he performs. The commissioner considered this evidence together with the claimant's age and work experience in concluding that Foreman was permanently and totally disabled.

 The employer attacks the commissioner's finding, pointing out Foreman continues to be employed and is earning more than twice what he was earning at the time of the initial hearing, facts found persuasive by the court of appeals in its reversal of the agency decision. In addition, the employer cites the lack of any expert testimony that the claimant's functional impairment rating has increased or that he is unemployable as additional deficiencies in Foreman's proof. Our task, however, is not to decide whether the evidence would support a finding contrary to that reached by the agency. *See Davenport Water Co. v. Iowa State Commerce Comm'n,* 190 N.W.2d 583, 591 (Iowa 1971). Nor is it proper for a reviewing court to disregard the claimant's proof simply be-

cause there are other types of evidence that, although not required, might be more persuasive or probative. *See Collentine,* 525 N.W.2d at 830 (rejecting requirement for expert testimony to show change of condition in review-reopening proceeding). Rather, our assignment is simply to examine the entire record for substantial evidence to support the findings made by the agency. If substantial evidentiary support exists, then it matters not that some of the evidence would support a contrary finding. *See Harpole,* 621 N.W.2d at 420 (" 'Ultimately, the question is not whether the evidence might support a different finding, but whether the evidence supports the findings actually made.' " (Citation omitted.)). We turn now to the commissioner's findings.

■ In deciding that Foreman was totally disabled, the commissioner concluded "independent work for another employer [was] not available in the competitive job market given claimant's disability." The commissioner placed little importance on Foreman's current employment, concluding it was only due to Foreman's management and ownership interest in his electrical contracting business that he was able to continue working. This conclusion was properly considered by the commissioner in assessing Foreman's earning capacity because earning capacity must be evaluated in terms of " 'the competitive job market without regard to the accommodation furnished by [a worker's] present employer.' " *U.S. West Communications, Inc. v. Overholser,* 566 N.W.2d 873, 876 (Iowa 1997) (quoting *Thilges v. Snap–On Tools Corp.,* 528 N.W.2d 614, 617 (Iowa 1995)). Here, there was no evidence that the work performed by the claimant for his own company was transferable to the competitive job market. *See Murillo v. Blackhawk Foundry,* 571 N.W.2d 16, 19 (Iowa 1997) (stating employer's re-employment

of injured worker in different position is relevant insofar as it shows employee has "ability to earn a living in the market place"). Moreover, since Foreman's continuing employment was reasonably viewed by the commissioner as an accommodation that disclosed no discernible earning capacity, the increase in Foreman's earnings is of relatively minor importance. *See Overholser,* 566 N.W.2d at 876 (" 'If post-injury earnings do not reflect [the] ability to compete with others for wages, they are not a proper measure of earning capacity.' " (Citation omitted.)).

Of greater significance to our review is the substantial evidence of Foreman's inability to do manual labor, particularly on a sustained basis. This proof supports the commissioner's finding that the claimant would not be able to find employment as a laborer in the competitive job market. Furthermore, Foreman's age and his lack of education or experience for a job that would not require prolonged sitting, standing, or walking further support the commissioner's implicit finding that the claimant's employment in another line of work is improbable. Therefore, we think there is substantial evidence in the record to support the agency's finding of permanent and total industrial disability. *See Wal–Mart Stores,* 657 N.W.2d at 501 (affirming total disability award for forty-three-year-old truck driver who could no longer drive a truck more than four hours at a time and had no training or experience for other employment); *Al–Gharib,* 604 N.W.2d at 635 (upholding commissioner's finding of total and permanent disability based on evidence claimant could not do full-time manual labor and that type of employment was the only work he was suited for by reason of prior work experience and training).

## VI. *Summary and Disposition.*

We conclude there is substantial evidence to support the commissioner's award

of permanent and total disability benefits. Therefore, we vacate the court of appeals' contrary decision and affirm the district court judgment upholding the commissioner's decision.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except LARSON, J., who takes no part.