Jose MURILLO, Appellee,

v.

BLACKHAWK FOUNDRY and Sedgwick
James, Appellants.

No. 96–184.

Supreme Court of Iowa.

Nov. 26, 1997.

Mark A. Woollums and Jean Dickson Feeney of Betty, Neuman & McMahon, L.L.P., Davenport, for appellants.

Daniel Bernstein of William J. Briebriesco & Associates, Bettendorf, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

HARRIS, Justice.

We granted further review in this workers' compensation case in which the industrial commissioner awarded disability due to a work-related injury. A pivotal question is whether in fixing the extent of the employee's industrial disability the commissioner inappropriately relied on earnings from a substitute job provided to the employee after his injury prevented him from performing his regular job.

Petitioner Jose Murillo was injured while working as a welder for respondent Blackhawk Foundry. Blackhawk's workers' compensation carrier is respondent Sedgwick James. Murillo's injury consisted of a broken hip and a compression fracture in his lower back. He was later released to return to work with a fifty-pound lifting restriction.

Murillo later re-injured his back on the job, but soon again returned to light work. His treating physician gave Murillo a twenty-four percent permanent functional impairment rating to his body as a whole stemming from his work-related injuries. When, because of his physical limitations, Murillo could no longer work as a welder, Blackhawk provided him with another job as a core cleaner. In this new position Murillo received approximately the same hourly wage he had received as a welder, and was able to put in longer hours.

This suit arose after Murillo filed for workers' compensation benefits. The industrial commissioner, reversing a higher disability finding by his deputy, found a twenty-five percent industrial disability and also awarded (likewise a reduction of his deputy's allowance) penalty benefits at twenty-five weeks under Iowa Code section 86.13 (1995).

On judicial review upon Murillo's petition, the district court reversed the industrial commissioner. The court determined the commissioner, in establishing the industrial disability, improperly considered Blackhawk's accommodation of Murillo. The court also concluded the commissioner's reduction of the penalty benefits award was arbitrary and capricious. The matter is before us on further review of a court of appeals decision. We vacate that decision, and affirm the district court judgment.

I. Our review is governed by Iowa Code chapter 17A, Iowa's administrative procedure act. *See* Iowa Code § 86.26; *Quaker Oats Co. v. Ciha,* 552 N.W.2d 143, 149 (Iowa 1996). Our review, like that of the district court, is on error. *Honeywell v. Allen Drilling Co.,* 506 N.W.2d 434, 435 (Iowa 1993). We reverse the commissioner's findings of facts if they are unsupported by substantial evidence in the record made before the agency when the record is viewed as a whole. Iowa Code § 17A.19(8)(f). Evidence is substantial when reasonable minds would accept it as adequate to reach the same findings. *Honeywell,* 506 N.W.2d at 435. The mere fact that we could draw inconsistent conclusions from the same evidence does not mean the commissioner's conclusions were unsupported by substantial evidence. *Terwilliger v. Snap–On Tools Corp.,* 529 N.W.2d 267, 271 (Iowa 1995). The ultimate question is not whether the evidence supports a different finding but whether it supports the finding the commissioner actually made. *Id.*

II. The industrial commissioner's decision included the following:

[W]e find a motivated claimant at or near his peak earnings age who sustained serious injuries that required surgical inter-

vention. A very lengthy healing period (approximately seventeen months) followed. Claimant is left with a twenty-four percent permanent impairment rating and work restrictions that no longer allow him to work as a welder, his pre-injury occupation. These restrictions make claimant a less attractive employee in the competitive labor market. Claimant's age, limited education and prior work experience make retraining improbable. These factors weigh toward a significant industrial disability.

The severity of claimant's industrial disability is mitigated by the fact that herein we have an employer that has fully accommodated any and all of the claimant's work restrictions; has provided claimant with stable employment since 1980 and has continued to do so since the end of claimant's healing period (approximately twenty-one months from the end of the healing period until the date of hearing); has provided claimant with meaningful employment, not a job of make-work nature; and, pre-injury versus post-injury, compensates the claimant at the same hourly rate with increased weekly hours, this resulting in an increase in actual earnings.

Murillo contends the commissioner's and the court of appeals' decisions are in conflict with *Thilges v. Snap–On Tools Corp.*, 528 N.W.2d 614 (Iowa 1995), a decision we filed shortly after the industrial commissioner filed his decision.

In *Thilges* the employee challenged a commissioner's ruling that refused to consider lost earning capacity beyond the time the hearing was held. *Thilges*, 528 N.W.2d at 616. We said we were "satisfied that the commissioner was correct in viewing loss of earning capacity in terms of the injured worker's present ability to earn in the competitive job market without regard to the accommodation furnished by one's present employer." *Id.* at 617. We thus found no basis for disturbing the commissioner's award of permanent partial disability benefits.

In *Ciha* we affirmed an industrial commissioner's decision, which also did not consider the accommodation the employer provided to the claimant. *Ciha*, 552 N.W.2d at 158. We noted, "if claimant were to be suddenly thrust into the job market, his ability to compete with other workers for positions would be limited in the most extreme sense. Clearly, without the accommodation, claimant's disability would be permanent and total." *Id.* Under the circumstances, we found it appropriate that the employer's accommodation was not used in determining the industrial disability. *Id.*

Neither *Thilges* nor *Ciha* reached the same factual situation here however. They stand only for the proposition that the industrial commissioner should not be influenced by the mere fact that an employer has found a place to employ an injured worker. What *Thilges* and *Ciha* did not decide is whether the industrial commissioner could consider whether the newly-furnished job—and the injured worker's ability to function in it—cast light on the injured worker's ability to earn a living in the market place. The worker's ability to function in some new jobs might cast light on that question. The ability to function in other jobs might not cast new light on that question. The transferability of the worker's skills is a factual question to be decided by the commissioner, but it must be based on evidence of wages available from those skills in the open market. We think the proper rule should be that an employer's special accommodation for an injured worker can be factored into the award determination to the limited extent the work in the newly created job discloses that the worker has a discerned earning capacity. To qualify as discernible, it must appear that the new job is not just "make work" provided by the employer, but is also available to the injured worker in the competitive market. We recently hinted the same rule in another context in *U.S. West Communications, Inc. v. Overholser*, 566 N.W.2d 873, 876 (Iowa 1997) (earning capacity measured by employee's own ability to compete in the labor market). The rule comports with holdings in other states. *See Doles v. Industrial Comm'n*, 167 Ariz. 604, 810 P.2d 602, 607 (1990); *Terrell v. Austin Bridge Co.*, 10 Ark. App. 1, 660 S.W.2d 941, 943 (1983); *Saums v. Raleigh Community Hosp.*, 487 S.E.2d 746,

750 (N.C.1997); *see also* 4 Arthur Larson, *Larson's Workers' Compensation Law* §§ 57.21, 57.34 at 10-121,10-239 to 10-245 (1997) (stating the ultimate objective of the disability test is to determine the wage that would have been paid in the open market under normal employment conditions to claimant as injured).

■ III. The foregoing rule, like many others, is easier to state than it is to apply. There is no indication in the record here that core cleaner positions are available in the labor market, or that Murillo's pay was comparable to that of other core cleaners. In short, the record is inadequate for determining the issue. It then becomes necessary to settle the upshot of the record's deficiency.

When there has been a failure of a required record, we frequently must decide whether it is appropriate to remand a case in order to supply the missing record. The answer most often is no; in view of limited judicial resources, we can ordinarily accord but one trial for each controversy. So the common practice is to resolve the matter against the party bearing the burden of proof. There is however a special rule in administrative appeals. Under Iowa Code section 17A.19(7), a record for additional evidence is not appropriate unless there were "good reasons" for the failed showing. *Heidemann v. Sweitzer*, 375 N.W.2d 665, 670 (Iowa 1985).

We think the record here calls for a remand for additional evidence. Some might contend the accommodation rule we have outlined was predictable. *See Doerfer Div. v. Nicol*, 359 N.W.2d 428, 438 (Iowa 1984) (commissioner could consider claimant's ability to earn wages in other suitable employment). We have not promulgated the rule prior to this opinion. So the case will be remanded to accord the employer the opportunity to make an appropriate showing on the accommodation question.

IV. The deputy industrial commissioner allowed forty-four weeks in penalty benefits under Iowa Code section 86.13. Blackhawk's denial of the claim was based, not on any medical opinion, but solely on the basis of the accommodation previously discussed. Because of the overwhelming medical testimony, the deputy decided the question of Murillo's permanent partial disability was not even debatable. As mentioned, the industrial commissioner agreed that penalty benefits were appropriate, but reduced them to twenty-five weeks.[1] On judicial review, the district court found the reduction was arbitrary and capricious because the commissioner did not provide any reasons for the reduction. The court stated:

> [T]his reduction of penalty benefits was arbitrary.... The industrial commissioner did not provide any basis for the reduction of the award. In *Vosberg v. A.Y. McDonald Mfg. Co.*, 519 N.W.2d 405 (Iowa App.1994), the court of appeals held that the industrial commissioner cannot, without explaining the basis for his decision, reach a conclusion regarding disability benefits which substantially differs from the conclusion reached by the deputy. This reasoning also applies to a substantially different decision regarding penalty benefits.

The court of appeals agreed and affirmed the district court's ruling.

Blackhawk contends Iowa Code section 86.13 prohibits penalty benefits in excess of fifty percent of the amount of the delayed benefits, and thinks this is an indication that the legislature thought penalty benefits were to be calculated by taking a percentage of the industrial disability benefits.[2]

---

1. Although the industrial commissioner reduced the number of weeks of penalty benefits from 44 to 25, the commissioner increased the percentage of benefits in relation to the industrial disability benefits from 13.5% to 20%. This is so because the number of permanency benefits decreased from 325 to 125 weeks. Therefore it can be argued the industrial commissioner increased the penalty benefits assessed to Blackhawk rather than decreasing them.

2. Case law does not indicate how the industrial commissioner is to compute penalty benefits. It is unclear whether the commissioner calculates them as a percentage of permanency benefits or whether the calculation is made on some other basis.

**20**

We reject the contention. Code section 86.13 does not call for an automatic reduction in penalty benefits just because there is a reduction of permanency benefits. Rather, in determining the amount of the penalty, we think the commissioner should also consider other factors such as "the length of the delay, the number of the delays, the information available to the employer regarding the employee's injuries and wages, and [any] prior penalties imposed against the employer under section 86.13." *Robbennolt v. Snap–On Tools Corp.*, 555 N.W.2d 229, 238 (Iowa 1996).

The commissioner's order decreasing Murillo's penalty benefits lacked the requisite detail required under *Terwilliger. Terwilliger*, 529 N.W.2d at 274 (commissioner must state reasons for rejecting any evidence and detail path to decision). The commissioner must explain the calculation and reasons for the decision. Without this explanation, appellate courts have no way to determine whether the commissioner acted arbitrarily or misapplied the law. *Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506, 510 (Iowa 1973).

We conclude the district court was correct in disapproving the reduction of penalty benefits and was correct in ordering remand to the industrial commissioner for explaining his reasons for the reduction.

The case must be remanded for enforcement of the district court judgment.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**