## IN THE COURT OF APPEALS OF IOWA

No. 16-1299
Filed November 8, 2017

**VICKY NORTON,**
        Petitioner-Appellant,

**vs.**

**HY-VEE, INC.,**
        Respondent-Appellee.
_____


Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.


An injured worker appeals the district court's denial of her petition for judicial review asserting the workers' compensation commissioner misinterpreted Iowa law addressing accommodated work. **AFFIRMED.**


Daniel J. Anderson of Wertz, Dake & Anderson, Cedar Rapids, for appellant.

Cynthia S. Sueppel of Scheldrup Blades Smith Schrock P.C., Cedar Rapids, for appellee.


Heard by Vogel, P.J., and Tabor and Bower, JJ.

**VOGEL, Presiding Judge.**

Vicky Norton appeals the district court's denial of her petition for judicial review, which alleged the workers' compensation commissioner misinterpreted Iowa law regarding the impact accommodated work has on an industrial disability rating. Because we conclude the commissioner did not misinterpret Iowa law, we affirm the decision of the district court.

## I. Background Facts and Proceedings.

Norton injured her neck and back at work on April 2, 2009. The employer, Hy-Vee, accepted the injury and paid workers' compensation benefits but disputed certain aspect of Norton's claim. Norton filed an arbitration petition with the workers' compensation commission in 2012, and the matter proceeded to a hearing on February 14, 2014. The presiding deputy commissioner concluded, among other things, Norton reached maximum medical improvement for her injury on November 16, 2011, Norton's work injury contributed to her mental health issues of anxiety and depression, and Norton sustained a seventy-percent industrial disability. In assigning the disability rating, the deputy stated:

> It was clear from the testimony of the witness who worked with [Norton], she was motivated and a valuable employee both before and after the injury. [Norton's] current supervisor will continue to employ [Norton] with her restrictions. [Norton] has developed unique skills that allow her to be an exceptional pharmacy technician. She is very productive in the current employment niche. However, if [Norton] was not able to work in this specific vocational area, [she] would not likely be employed. [Norton] is only able to work 6 hours per day. [She] is working 25 percent less for her employer, a significant reduction in her ability to work.
> [Norton's] anxiety and depression are part of [her] work injury. Neither Dr. Netolicky nor Dr. March have imposed any specific restriction based upon these conditions at the time of the hearing.

Considering the situs and severity of [Norton's] injury, the length of her healing period, her motivation level, her age, education, employment background, ability to retrain, her permanent impairment, permanent restrictions, and all other industrial disability factors outlined by the Iowa Supreme Court, I find [Norton] has proven a [seventy] percent loss of future earning capacity as a result of the April 2, 2009 work injury.

Both parties appealed the deputy's decision to the workers' compensation commissioner; Norton sought permanent total disability benefits, and Hy-Vee claimed the industrial disability award should have been twenty-five percent rather than a seventy percent. The commissioner issued a decision on December 16, 2015, largely affirming the deputy's ruling[1] and providing additional analysis. With respect to the award of seventy-percent industrial disability, the commissioner stated:

> The presiding deputy was correct in rejecting [Hy-Vee's] argument that a permanent 25 percent reduction in [Norton's] work hours as a pharmacy technician at [Hy-Vee] does not result in significant permanent disability. Such a reduction in work hours results in a very significant loss of job opportunities in the labor market.
> On the other hand, the presiding deputy was correct in rejecting [Norton's] argument that she is permanently and totally disabled. While [Norton] can no longer work more than 30 hours per week, and she is being accommodated for that disability by [Hy-Vee], she continues in suitable and stable employment. [Norton's] managers at [Hy-Vee] testified at hearing, without contradiction, that [Norton] is a highly valued employee who probably would find new employment, even with her permanent restrictions, should she leave her employment with [Hy-Vee]. [Norton's] managers also testified that the high quality of [Norton's] work, along with her extra-duty tasks more than make up for any of her deficits. A scheduled work week of 30 hours per week is considered full time,

---

[1] The commissioner did reverse the deputy's award of penalty benefits. Norton included this issue in her petition for judicial review. The district court reversed the commissioner's denial of penalty benefits and remanded the matter to the agency. Before the remand could be completed, Norton filed a notice of appeal to this court. However, the issue of the award of penalty benefits is not raised on appeal, so the district court's decision on that issue remains as the final decision.

and gainful employment, in many employments in our current labor market.

Many argue [Norton's] accommodated work should not be considered because a future loss of employment due to a discontinuance of those accommodations cannot form the basis of a review-reopening proceeding, and they cite for this proposition the Iowa Supreme Court decision in *U.S. West v. Overholser*, 566 N.W.2d 873 (Iowa 1997). However, this would be a misinterpretation of the court's opinion in *Overholser*. In that case, the claimant failed to establish that the loss of her employment was due to a discontinuance of an accommodation and the claimant also failed to establish that the prior agreement for settlement was lower due to her accommodated employment. The court in *Overholser* cited favorably their opinion in *Gallardo v. Firestone Tire & Rubber Co.*, 482 N.W.2d 393, 396 (Iowa 1992), which allowed a review-reopening proceeding and an increase in compensation when the prior agency decision specifically stated that the award was adjusted downward due to continued accommodated employment. *Overholser*, 566 N.W.2d at 876-77.

In this case, the award of permanent disability is based on [Norton's] ability to continue in her pharmacy technician position at Hy-Vee and her ability to find new employment should she ever leave Hy-Vee.

Both parties sought judicial review of the commissioner's decision in the district court. Norton claimed the commissioner incorrectly interpreted the applicable controlling case law and impermissibly decreased her industrial disability rating based on Hy-Vee's accommodation of her permanent work restrictions. Hy-Vee sought a reversal of the agency decision that concluded Norton's work injury caused her mental injury. In July 2016, with respect to Norton's claim, the district court affirmed the commissioner's decision, concluding:

Here, [the commissioner] considered Norton's work history, work schedule, employee value, and accommodations in affirming [the deputy's] industrial disability award. The commissioner noted that Norton has worked for five years after injuring her back at Hy-Vee. He noted that Norton continues to be a valuable employee at Hy-Vee, and that thirty hour workweeks are considered full-time, gainful employment in some jobs in the current labor market.

Finally, he noted that Norton's colleagues expressed their belief that Norton would probably find new employment; even with her permanent restrictions should she leave Hy-Vee. The commissioner's conclusions support a finding that he correctly interpreted *Murillo*,[2] *Ciha*,[3] and *Thilges*[4] by focusing on Norton's ability to earn in the competitive job market.

Extending the analysis even further affirms the commissioner correctly interpreted *Overholser*, which states: "the injured's loss of earning capacity is properly viewed 'in terms of the injured worker's present ability to earn in the competitive job market without regard to the accommodation furnished by one's present employer.'" [*Overholser*, 566 N.W.2d at 876]. "[T]he disability award must not be adjusted downward because the worker is receiving sheltered employment or merely because the employer modifies its job requirements in light of an employee's disability." *Id.* The court, in *Overholser*, noted that "there was no evidence that Frances'[s] disability rating was 'adjusted downward' because of accommodation by U.S. West. [*Id.*] Additionally, the court was not convinced that U.S. West "actually accommodated her original injury." *Id.* at 877. Instead, the Court concluded that "the record does not support the contention that her work was modified . . . to accommodate her injury or that she received sheltered employment which distorted her true earning capacity." *Id.*

First, as in *Overholser*, there is no evidence in the record that Norton's disability rating was "adjusted downward" due to an accommodation. [The deputy] awarded Norton an industrial disability rating of [seventy percent] after considering each opinion provided by Norton's doctors, Norton's motivation level, age, education, employment background, severity of injury, length of healing, and other factors outlined by the Iowa Supreme Court. *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 192 (Iowa 1980). [The deputy] assessed each doctors' medical history, history with Norton, and type of examination performed. [The deputy] assessed more weight to some doctors, rather than others. For example, [the deputy] found the opinions of Dr. Netolicky and Dr. March more reliable than those of Dr. Sundermann and Dr. Mooney due to their extensive experience with Norton's medical history.

"As we have explained, the commissioner, as fact finder, is responsible for determining the weight to be given expert testimony." *Sherman v. Pella Corp.*, 576 N.W.2d 312, 321 (Iowa 1998). "The commissioner is free to accept or reject an expert's opinion in whole or in part, particularly when relying on a conflicting

---

[2] *See Murillo v. Blackhawk Foundry*, 571 N.W.2d 16 (Iowa 1997).
[3] *See Quaker Oats Co. v. Ciha*, 552 N.W.2d 143 (Iowa 1996).
[4] *See Thilges v. Snap-On Tools Corp.*, 528 N.W.2d 614 (Iowa 1995).

expert opinion." *Id.* [The commissioner] assessed similar weight to Dr. Netolicky['s], Dr. March['s], and Dr. Perri's opinions due to their more recent experience with Norton. Therefore, [the deputy's] award of [seventy percent] disability, and [the commissioner's] affirmation, was supported by substantial evidence and was not adjusted downward from another rating. Iowa Code § 17A.19(10)(f) [(2015)].

Second, the court in *Overholser*, focused on U.S. West's accommodations and their effect on Frances'[s] true earning capacity. While the *Overholser* court was not convinced accommodations were present, Hy-Vee acknowledges they accommodated Norton. However, Hy-Vee does not believe those accommodations distorted Norton's true earning capacity or her ability to compete in the marketplace. The commissioner noted that Norton is a highly valued employee who would likely find new employment, even with her permanent restrictions. Additionally, Hy-Vee has not created a new job for Norton. Norton's supervisors typically place extra-duty tasks on her because they know she can complete them, as well as schedule her during some of pharmacy's busiest hours. Therefore, Hy-Vee's accommodation of Norton's disability does not equate to "sheltered employment" and [the commissioner's] conclusion that Norton was someone who would probably find new employment is supported by substantial evidence.

Accordingly, the commissioner correctly interpreted *Overholser*. *Overholser*, as well as *Murillo*, *Ciha*, and *Thilges*, emphasize awarding a disability rating that reflects true earning capacity. To determine the correct disability award, the deputy must not adjust the award downward due to accommodations when there is not a similar job available in the marketplace. In affirming [the deputy], [the commissioner] neither adjusted downward, nor considered Norton's employment to be "sheltered." Instead, he concluded the [seventy percent] disability rating was "based on [Norton's] ability to continue in her pharmacy technician position at Hy-Vee and her ability to find new employment should she ever leave Hy-Vee." Therefore, the appeal decision is not based upon an irrational, illogical, or wholly unjustifiable interpretation of a provision of law. Iowa Code § 17A.19(10)(*l*).

Norton appeals claiming the district court incorrectly interpreted her claim as a challenge to the substantial evidence supporting the agency's decision, rather than a challenge to the agency's interpretation of Iowa law. She further asserts the agency did make a "downward adjustment" to her industrial disability rating

based on an incorrect interpretation of *Overholser* and *Gallardo*. Hy-Vee defends the agency's decision, asserting no downward adjustment was made and the agency correctly interpreted the applicable case law.

**II. Scope and Standard of Review.**

Our review of the workers' compensation commissioner's decision is governed by Iowa Code chapter 17A. *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 768 (Iowa 2016). "We will apply the standards of section 17A.19(10) to determine whether we reach the same results as the district court." *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 255–56 (Iowa 2012). Because of the differing standards of review in Iowa Code section 17A.19(10), it is vital that parties "search for and pinpoint the precise claim of error on appeal." *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006).

In this case, Norton asserts the commissioner misinterpreted the controlling supreme court case law regarding how accommodated work is considering in setting an industrial disability rating. We review this claim under section 17A.19(10)(c), to determine whether the substantial rights of Norton were prejudiced because the agency's decision was "[b]ased on an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency." *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012) ("[W]e have stated that no deference is given to the commissioner's interpretation of law because the 'interpretation of the workers' compensation statutes and *related case law* has not been clearly vested by a provision of law in the discretion of the agency.'" (emphasis added)). Because the agency has not been vested with the authority

to interpret supreme court case law, "we do not give deference to the agency's interpretation and will substitute our judgment . . . if we conclude the [agency] made an error of law." *Simon Seeding & Sod, Inc. v. Dubuque Human Rights Comm'n*, 895 N.W.2d 446, 456 (Iowa 2017) (citation omitted).

## III. Accommodated Work.

Norton asserts the commissioner incorrectly interpreted the supreme court's case law pertaining to the effect an employer's accommodation of an injured employee's work restriction has on the injured employee's industrial disability rating. Norton claims she is entitled to permanent total disability but the commissioner erroneously awarded only seventy percent industrial disability after making a "downward adjustment" based on Hy-Vee's accommodation of her work restrictions. It is her contention that the commissioner incorrectly relied on the cases of *Gallardo* and *Overholser* in making the downward adjustment.

In *Gallardo* the supreme court was asked to address the issue of "whether substantial evidence in the record supports the agency's conclusion that Gallardo's earning *capacity* remained unchanged" between a first and second review-reopening proceeding. 482 N.W.2d at 396. In reciting the underlying facts of Gallardo's case, the supreme court noted the first review-reopening agency decision had "reduced" Gallardo's industrial disability rating by ten percent "based on the company's professed willingness to accommodate Gallardo's medical restrictions with continued employment." *Id.* at 395. After the employer could no longer accommodate the restrictions, Gallardo applied for additional benefits through a second review-reopening proceeding. *Id.* The commissioner denied additional benefits, finding a lack of evidence to support a

change in Gallardo's physical condition. *Id.* The supreme court found substantial evidence did not support the commissioner's rejection of Gallardo's second review-reopening petition and remanded the case to the agency to adjust Gallardo's award "upward by ten percent to reflect the full impact of the industrial disability determined at the first hearing." *Id.* at 397.

The supreme court in *Gallardo* was not asked to decide the legal validity of the commissioner's decision in the first review-reopening proceeding to "reduce" the worker's industrial disability rating based on the employer's work accommodation. The supreme court was only asked to decide whether substantial evidence supported the commissioner's second review-reopening decision. Thus, we agree with Norton that *Gallardo* decision should not be interpreted as the supreme court's approval of a "downward adjustment" to an industrial disability rating based on an employer's accommodation of work restrictions.

Likewise, the *Overholser* case does not support the proposition that an industrial disability rating can be reduced by the employer's accommodation of work restrictions. To the contrary, the supreme court in *Overholser* specifically stated: "[T]he disability award *must not* be adjusted downward because the worker is receiving sheltered employment or merely because the employer modifies its job requirements in light of an employee's disability." 566 N.W.2d at 876 (emphasis added). While the injured worker in *Overholser* pointed to the *Gallardo* case in support of her claim that her prior workers' compensation settlement should be adjusted upward after she was laid off by her employer, the supreme court distinguished the facts of the two cases and ultimately affirmed

the commissioner's refusal to increase the industrial disability award based on the injured worker's dismissal from her job. *Id.* at 876–77.

The supreme court has repeatedly stated that an industrial disability rating is to be based on the injured workers' "earning capacity"—the worker's "present ability to earn in the competitive job market"—"without regard to the accommodation furnished by one's present employer." *Thilges*, 528 N.W.2d at 617; *accord Ciha*, 552 N.W.2d at 157 ("Although we applaud the efforts of [the employer] in modifying the workplace to accommodate Ciha's disability, such efforts are not determinative of Ciha's industrial disability rating.").

In *Murillo*, the supreme court clarified how the employer's accommodation of an injured worker's work restrictions factors into the earning capacity assessment:

> Neither *Thilges* nor *Ciha* reached the same factual situation here however. They stand only for the proposition that the industrial commissioner should not be influenced by the mere fact that an employer has found a place to employ an injured worker. What *Thilges* and *Ciha* did not decide is whether the industrial commissioner could consider whether the newly-furnished job—and the injured worker's ability to function in it—cast light on the injured worker's ability to earn a living in the market place. The worker's ability to function in some new jobs might cast light on that question. The ability to function in other jobs might not cast new light on that question. The transferability of the worker's skills is a factual question to be decided by the commissioner, but it must be based on evidence of wages available from those skills in the open market. *We think the proper rule should be that an employer's special accommodation for an injured worker can be factored into the award determination to the limited extent the work in the newly created job discloses that the worker has a discerned earning capacity.* To qualify as discernible, it must appear that the new job is not just "make work" provided by the employer, but is also available to the injured worker in the competitive market. We recently hinted the same rule in another context in [*Overholser*, 566 N.W.2d at 876] (earning capacity measured by employee's own ability to compete in the labor market).

571 N.W.2d at 18 (emphasis added).  Because the court's holding in *Murillo* was a new rule, the supreme court remanded the case to the agency "to accord the employer the opportunity to make an appropriate showing on the accommodation question."  *Id.* at 19 (noting there was no evidence in the record whether the accommodated position was available in the labor market and whether the pay for the position was comparable to other positions in the market).  This new rule was applied by the supreme court in *Ellingson v. Fleetguard, Inc.*:

> [A]n employer's accommodation of an employee's inability to perform that person's usual work may only be considered if such accommodation would be available in the general labor market. Otherwise, the loss of earning capacity must be based on the injured worker's present ability to earn in the competitive job market without regard to any accommodation furnished by that person's present employer.

599 N.W.2d 440, 445 (Iowa 1999) (citation omitted), *overruled on other grounds by Waldinger Corp. v. Mettler*, 817 N.W.2d 1 (2012).  Again, because the agency in *Ellingson* did not make a finding concerning "whether the type of work accommodations furnished to Ellingson by her employer would be available in the competitive job market"—the agency's decisions predated the supreme court's *Murillo* decision—the case was remanded to the agency to make those findings.  *Id.* at 445–46.

Further, in 2004, the supreme court affirmed the commissioner's finding of permanent total disability in a review-reopening proceeding for a worker who remained employed earning twice what he earned at the time of the initial hearing.  *See Acuity Ins. v. Foreman*, 684 N.W.2d 212, 219–20 (Iowa 2004),

*abrogated on other grounds by Kohlhaas v. Hog Slat, Inc.*, 777 N.W.2d 387 (Iowa 2009). The *Foreman* court stated:

> In deciding that Foreman was totally disabled, the commissioner concluded "independent work for another employer [was] not available in the competitive job market given claimant's disability." The commissioner placed little importance on Foreman's current employment, concluding it was only due to Foreman's management and ownership interest in his electrical contracting business that he was able to continue working. *This conclusion was properly considered by the commissioner in assessing Foreman's earning capacity because earning capacity must be evaluated in terms of "the competitive job market without regard to the accommodation furnished by [a worker's] present employer."* [*Overholser*, 566 N.W.2d at 876] (quoting [*Thilges*, 528 N.W.2d at 617]). Here, there was no evidence that the work performed by the claimant for his own company was transferable to the competitive job market. *See* [*Murillo*, 571 N.W.2d at 19] (stating employer's re-employment of injured worker in different position is relevant insofar as it shows employee has "ability to earn a living in the market place"). Moreover, since Foreman's continuing employment was reasonably viewed by the commissioner as an accommodation that disclosed no discernible earning capacity, the increase in Foreman's earnings is of relatively minor importance. *See Overholser*, 566 N.W.2d at 876 ("If post-injury earnings do not reflect [the] ability to compete with others for wages, they are not a proper measure of earning capacity." (citation omitted.)).

*Id.* at 220 (emphasis added).

Based on the above law, we agree with Norton that an injured worker's performance of accommodated work, in and of itself, many not be used to reduce a worker's industrial disability rating.[5] But the injured worker's performance of

---

[5] We note the legislature recently amended Iowa Code section 85.34(u), and the statute now specifically states, in part:

> If an employee who is eligible for compensation under this paragraph returns to work or is offered work for which the employee receives or would receive the same or greater salary, wages, or earnings than the employee received at the time of the injury, the employee shall be compensated based only upon the employee's functional impairment resulting from the injury, and not in relation to the employee's earning capacity. Notwithstanding section 85.26, subsection 2, if an employee who is eligible for compensation under this paragraph returns to work with

accommodated work can be considered in assessing the industrial disability rating if the work being performed is "transferrable to the competitive job market," *id.*, and "discloses that the worker has a discerned earning capacity." *Murillo*, 571 N.W.2d at 18. "To qualify as discernible, it must appear that the new job is not just 'make work' provided by the employer, but is also available to the injured worker in the competitive market." *Id.*

While we agree with Norton on the state of the current law regarding accommodated work, we disagree that the commissioner misinterpreted the law in Norton's case. In setting the seventy-percent industrial disability rating, the deputy commissioner noted Norton was motivated and a valuable member of the pharmacy team at Hy-Vee, Norton had developed "unique skills," and she was "very productive in the current employment niche," but also the deputy noted she would likely not be able to work out in the specific vocational area. The deputy did not conclude Norton would be unable to find work apart from Hy-Vee but instead found she would be limited to the "specific vocational area"—pharmacy technician work. In determining the industrial disability rating, the deputy stated:

> Considering the situs and severity of [Norton's] injury, the length of her healing period, her motivation level, her age, education, employment background, ability to retrain, her permanent impairment, permanent restrictions, and all other industrial disability factors outlined by the Iowa Supreme Court, I

the same employer and is compensated based only upon the employee's functional impairment resulting from the injury as provided in this paragraph and is terminated from employment by that employer, the award or agreement for settlement for benefits under this chapter shall be reviewed upon commencement of reopening proceedings by the employee for a determination of any reduction in the employee's earning capacity caused by the employee's permanent partial disability.

2017 Iowa Acts ch. 23, § 8. Because this legislative amendment occurred subsequent to Norton's injury and the agency's decision in this case, we need not address the effect of this legislative change on the supreme court's case law on accommodated work.

find [Norton] has proven a [seventy] percent loss of future earning capacity as a result of the April 2, 2009 work injury.

On intra-agency appeal, the commissioner affirmed the deputy's seventy-percent rating, concluding the facts did not support a lower rate, as argued by Hy-Vee, or a permanent total rating as argued by Norton. The commissioner found the accommodated work being provided was "suitable and stable employment" and credited Norton's manager's testimony that Norton "probably would find new employment, even with her permanent restrictions, should she leave her employment with [Hy-Vee]." The commissioner also noted, "A scheduled work week of 30 hours per week is considered full time, and gainful employment, in many employments in our current labor market."

The commissioner then went on to address the concern that if Norton lost her employment at Hy-Vee because the accommodations were discontinued, then she would not qualify for a review-reopening proceeding. The commissioner stated Norton would be eligible for a review-reopening, noting the *Gallardo* case allowed a review-reopening proceeding to result in an increased industrial disability rating when the accommodated work was no longer provided because the initial award indicated the rate was based on accommodated work. The commissioner then noted the seventy-percent industrial disability rate was based on Norton's ability to continue at her job at Hy-Vee *and* her ability to find new employment if she left Hy-Vee.

Contrary to Norton's claims, we do not interpret the language used in the commissioner's decision to indicate that the commissioner found Norton to be permanently totally disabled but then reduced the rating to seventy-percent

based on the work accommodation. The seventy-percent rating was based on Norton's current condition, but the commissioner wanted to assure Norton that a review-reopening proceeding would be available should her earning capacity change in the future. *See Kohlhaas*, 777 N.W.2d at 392–93 (noting a review-reopening proceeding can be based on the "worsening of the claimant's physical condition," the "diminution of earning capacity," the development of a permanent disability from a temporary disability, the discovery of critical facts unknown and not discoverable at the time of the prior award, or the development of industrial disability caused by a scheduled member injury).

Norton claims the commissioner has subsequently cited her case as authority in five other agency decisions for support for the position that a downward departure based on accommodated work is acceptable. She claims the commissioner's citation of her case in those other decisions demonstrates the commissioner misinterpreted Iowa law in this case and shows his intent to depart from long-standing supreme court precedent. However, the validity of the interpretation of Iowa law in those other five agency decisions is not before us,[6] nor does it lead us to conclude the commissioner's interpretation of Iowa law in this case was incorrect. We affirm the district court's decision denying Norton's petition for judicial review.

**AFFIRMED.**

Bower, J., concurs; Tabor, J., dissents.

---

[6] If the commissioner's interpretation of the law on accommodated work is incorrect in the cases cited by Norton, that interpretation can be corrected through judicial review in those cases.

**TABOR, Judge.** (dissenting)

I respectfully dissent. Under Iowa case law, the workers' compensation commissioner should view an injured worker's loss of earning capacity in terms of her present ability to earn in the competitive job market without regard to any accommodation furnished by her present employer.[7] *See U.S. West Commc'n, Inc. v. Overholser*, 566 N.W.2d 873, 876 (Iowa 1997) (stating "an injured employee's earning capacity must [not be measured] by the largesse of a particular employer" (citation omitted)); *Thilges v. Snap-On Tools Corp.*, 528 N.W.2d 614, 617 (Iowa 1995) ("Claimant is not likely to find other employers in the competitive employment market as understanding, cooperative, and helpful as this employer has been."). The commissioner did not follow the case law in Norton's case; instead the agency specifically considered Norton's accommodated employment in its award of an industrial disability of seventy percent. Accordingly, we should remand this case for the commissioner to apply the proper legal standard. *See Thilges*, 528 N.W.2d at 617 (stating commissioner correctly viewed loss of earning capacity "in terms of the injured worker's present ability to earn in the competitive job market *without regard to the accommodation furnished by one's present employer*" (emphasis added)); *see also Murillo v. Blackhawk Foundry*, 571 N.W.2d 16, 18 (Iowa 1997) ("[I]t must appear that the new job . . . is also available to the injured worker in the competitive labor market.").

---

[7] Hy-Vee does not assert that a recent legislative amendment to Iowa Code section 85.34(u) would govern Norton's industrial disability rating.

The commissioner's decision misinterpreted *Overholser* and *Gallardo v. Firestone Tire & Rubber Co.*, 482 N.W.2d 393, 395–96 (Iowa 1992) (stating a reduction of industrial disability based upon accommodated employment in an earlier proceeding was not appealed).  The commissioner prefaced his analysis with the statement "many argue" that accommodated work should not be considered when determining future loss of employment opportunities.  He then suggested that under the authority of *Gallardo* and *Overholser,* the agency was allowed to make a downward adjustment of an industrial disability award due to continued accommodation by the injured worker's present employer as long as the agency stated it was doing so.  The commissioner acknowledged basing Norton's award of permanent disability *both* on Norton's ability to continue in her pharmacy technician position at Hy-Vee under a six-hour work day accommodation with breaks as needed and on her ability to find new employment should she ever leave Hy-Vee.  The commissioner should not have considered Norton's ability to continue in the accommodated position created by her current employer in its analysis of her request for total permanent disability. *See Overholser*, 566 N.W.2d at 877 (stating the issue is whether the "disability rating is artificially low and contingent upon [the employee's] continued employment with [an employer providing an accommodation]" and concluding no evidence showed "she received sheltered employment, which distorted her *true earning capacity*" (emphasis added)).

The majority agrees with Norton on the current state of the law regarding accommodated work, yet refuses to hold the agency to the correct legal standard.  It is not a mystery that the agency believes it is empowered to make a

downward departure in a worker's industrial disability rating based on the worker's current accommodated work—the commissioner explicitly based Norton's award on Hy-Vee's accommodated employment without a finding Norton's accommodated job was *not* "sheltered employment" or a finding Hy-Vee had proven the same job could be found in the broader labor market.[8] We owe no deference to the agency's legal interpretation in this case. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012).

We also note the agency has perpetuated its misinterpretation several times after resolving Norton's intra-agency appeal, explicitly citing the commissioner's decision in Norton's case as precedential for other workers' claims involving accommodation. *See, e.g.*, *Baker v. Bridgestone/Firestone*, File No. 504073, 2016 WL 1554240, at *11 (Remand Dec. Apr. 13, 2016) (rejecting claimant's argument that agency should not consider his current accommodated work in assessing industrial loss); *Kincaid v. Iowa Dep't of Transp.*, File No. 5044860, 2016 WL 1291780, at *1 (App. Dec. Mar. 30, 2016)

---

[8] Norton testified, to work the accommodated six-hour schedule, she sometimes needed to rest on the floor, but she needed to work six hours to maintain her health insurance. Hy-Vee acknowledged Norton's injury prevented her from working on the computer or answering the phone. Hy-Vee's treating doctor opined:

> I do not believe she is or will ever be capable of maintaining full time employment. Her pain is severe, life changing and permanent. It's all she can do to struggle every day to try and get through the designated [six] hour work day and then get home where she can then take her rapid acting analgesic . . . and then basically sit or lay around the rest of the day and not get much of anything done at home without further struggle. She needs the pain relief badly by the time she gets home. She reports she never takes [a controlled-substance drug] at work as it makes her sleepy and she needs to be alert at work.
>
> . . . .
>
> . . . [T]his woman suffers from chronic severe pain related to a work injury. I believe her pain is neuropathic and there is no cure . . . . It would be nice if she could have her hours at the pharmacy limited to [four] hours per day and still retain an "affordable health insurance."

("The [industrial disability award was proper due to his ability to continue in his job with accommodations by the employer. Claimant asserts the award should be much higher because the employer has not finally determined that those accommodations will continue in the future. However, should claimant no longer be able to continue in his current job or in similar employment without loss of wages as a result of his work injury, such would constitute a material change of condition" for a "timely petition for review reopening"); *Chapman v. Abbe, Inc.*, File No. 5047167, 2016 WL 1533148, at *12 (Arb. Dec. Apr. 7, 2016) (rejecting assertion "this agency should ignore claimant's current accommodated work in assessing industrial disability"); *Franks v. CenturyLink, Inc.*, File No. 5051501, 2016 WL 1272070, at *8 (Arb. Dec. Mar. 29, 2016) (making a specific adjustment downward and stating, if claimant loses his current job and is unable to secure a similar job in the labor market, he "could seek re-evaluation of his disability in a *timely* review-reopening proceeding) (emphasis added)); *Pablo Argueta v. United Brick & Tile Co.,* File No. 5044420, 2015 WL 9419948, at *10 (Arb. Dec. Dec. 22, 2015) ("[A] specific adjustment downward is set forth in this decision.").

The majority emphasizes these later rulings are not before us, and notes if the agency was incorrect in its interpretation of the law on accommodated work in reducing the awards of those other workers, then the agency's mistakes can be corrected through judicial review. But why isn't this court fixing the problem today? The majority gives the agency the benefit of the doubt that it did not apply the wrong legal standard in Norton's case, all the while knowing that in the interim, the agency is flouting its legal misinterpretation, to which we owe no deference, in its ongoing decision making. As the reviewing court, it is our

obligation to remand this case to ensure the agency's analysis of Norton's disability is viewed under the correct legal standard.[9]

Accordingly, the commissioner should be instructed on remand to determine whether Hy-Vee's accommodations meet the requirements for "sheltered employment." Additionally, the commissioner should be instructed to determine whether Hy-Vee met its burden of establishing the same accommodated job existed in the competitive labor market. Finally, the commissioner should apply the law correctly. *See Quaker Oats v. Chia*, 552 N.W.2d 143, 157–58 (Iowa 1996) (rejecting claim employee deserved a lower disability rating due to employer's accommodation, which is admirable, but "such efforts are not determinative of [employee's] industrial disability rating"); *Wal-Mart Stores v. Henle*, No. 2014 WL 69540, at *7 (Iowa Ct. App. Jan. 9, 2014) (rejecting employer's interpretation of *Murillo and Thilges* and ruling "employer's accommodation of an injured employee—like Henle's part-time job and excused sick days—may only be factored into an industrial disability award if the commissioner finds a position equivalent to the newly created job is available in the competitive labor market").

---

[9] Neither are we convinced the fact Norton "might" be eligible for a review-reopening proceeding changes the resolution of the "legal misinterpretation" issue herein. The opportunity for a claimant to file a review-reopening is not open-ended; the legislature has imposed time constraints. *See* Iowa Code § 85.26(1)–(2).