# IN THE SUPREME COURT OF IOWA

No. 22–1421

Submitted December 13, 2023—Filed February 9, 2024

**P.M. LATTNER MANUFACTURING CO.** and **ACCIDENT FUND GENERAL INSURANCE CO.,**

Appellees,

vs.

**MICHAEL RIFE,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

A workers' compensation claimant challenges a district court ruling reversing a commission award of permanent partial disability benefits and reimbursement of expenses for independent medical examination. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND REVERSED IN PART; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

McDonald, J., delivered the opinion of the court, in which all justices join.

Anthony J. Olson of Rush & Nicholson, P.L.C., Cedar Rapids, for appellant.

Laura J. Ostrander, General Counsel, Accident Fund Holdings, Inc. d/b/a AF Group, Lansing, Michigan, for appellee.

**MCDONALD, Justice.**

Michael Rife worked as a welder for P.M. Lattner Manufacturing Company. In 2009, Rife sustained an injury to his shoulder arising out of and in the course of his employment with P.M. Lattner and sought workers' compensation benefits. Rife and P.M. Lattner entered into a commutation settlement agreement for that injury. In 2018, Rife sustained another injury to his shoulder arising out of and in the course of his employment and sought workers' compensation benefits. The commissioner found the injury caused a new permanent partial disability and awarded Rife benefits. There are two questions presented in this appeal. First, how should Rife's benefits for his second permanent partial disability be determined to "prevent all double recoveries and all double reductions in workers' compensation benefits for permanent partial disability." 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 20. Second, whether and to what extent is Rife entitled to reimbursement for an independent medical examination he obtained while pursuing his claim for benefits.

I.

In 2009, Rife sustained an injury to his right shoulder in the course of his employment with P.M. Lattner. Three doctors assessed the injury and issued impairment ratings. One doctor issued an impairment rating of 14% to the right shoulder, or 8% to the body as a whole. Another doctor issued an impairment rating of 12% to the right shoulder, or 7% to the body as a whole. A third doctor issued an impairment rating of 15% to the right shoulder, or 9% to the body as a whole. The commissioner never made a finding regarding the impairment rating because the parties entered into a commutation settlement agreement in September 2010. The commutation settlement stipulated that Rife sustained a permanent partial disability of 29.6% to the body as a whole.

At the time of the 2009 injury, permanent partial disability arising out of

an injury to the shoulder was a nonscheduled disability. *See* Iowa Code § 85.34(2)(*u*) (2009). As a nonscheduled permanent partial disability, compensation was determined by the percentage loss in the "employee's earning capacity caused by the disability." *Id.* Determining the amount of compensation for a permanent partial disability based on the employee's reduction in earning capacity was and is known as the industrial method for calculating an industrial disability. *See Sherman v. Pella Corp.*, 576 N.W.2d 312, 320–21 (Iowa 1998) ("[U]nscheduled injuries are compensated by determining the employee's industrial disability. One arrives at industrial disability by determining the loss to the employee's earning capacity."); *Second Inj. Fund of Iowa v. Shank*, 516 N.W.2d 808, 813 (Iowa 1994) ("Industrial disability goes beyond body impairment and measures the extent to which the injury impairs the employee's earning capacity."); *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 14 (Iowa 1993) (stating the industrial method measures "the loss to the employee's earning capacity").

In 2017, the general assembly changed the method of calculating permanent partial disability benefits for an injury to the shoulder. 2017 Iowa Acts ch. 23, § 7 (codified at Iowa Code § 85.34(2)(*n*) (2018)). The 2017 amendment reclassified a permanent partial disability arising out of an injury to the shoulder as a scheduled disability. *See id.* Compensation for a scheduled disability was and is based on the percentage of functional impairment to the scheduled member in relation to a set number of weeks. *See* Iowa Code § 85.34(2)(*a*)–(*v*) (2018). With respect to a shoulder injury resulting in permanent partial disability, specifically, compensation is now based on the percentage of functional impairment to the shoulder in relation "four hundred weeks" of compensation. *See id.* § 85.34(2)(*n*).

Rife sustained a second work-related injury to his right shoulder in August

2018 and filed this claim for workers' compensation benefits against P.M. Lattner and its insurer, Accident Fund General Insurance Co. (collectively, "P.M. Lattner"). After treating with several physicians, Rife sought an independent medical examination with Dr. Sunny Kim. Dr. Kim had performed an impairment rating for Rife's prior injury. On this occasion, Dr. Kim assessed Rife with a 19% impairment to the shoulder, or 11% to the body as a whole. Dr. Kim did not distinguish between the 2009 and 2018 shoulder injuries when assessing Rife's permanent functional impairment.

The matter proceeded to an arbitration proceeding. The deputy commissioner found Rife suffered a 19% functional impairment to his right shoulder and would be entitled to 19% of 400 weeks' compensation. P.M. Lattner argued that it was entitled to an apportionment of liability pursuant to Iowa Code section 85.34(7) and sought an offset or credit for its prior partial disability payment. Section 85.34(7) provides that an "employer is not liable for compensating an employee's preexisting disability that arose out of and in the course of employment from a prior injury with the employer, to the extent that the employee's preexisting disability has already been compensated." *Id.* § 85.34(7). P.M. Lattner argued that because Rife's 29.6% loss of earning capacity caused by the prior injury was greater than Rife's 19% functional impairment to his shoulder caused by the subsequent injury, then Rife was not entitled to any compensation.

The deputy commissioner rejected P.M. Lattner's apportionment argument under section 85.34(7) on two grounds. First, as a legal matter, the deputy commission concluded it "would be absurd to provide defendants a credit against a scheduled award for prior industrial disability benefits paid." The two awards were based on wholly different criteria. The deputy commissioner concluded that P.M. Lattner might be entitled to an offset or credit "based upon the impairment

ratings attributed to the first injury." Second, as a factual matter, P.M. Lattner did not produce evidence to establish the impairment rating attributable to the first injury for which they might be given credit.

At the arbitration hearing, Rife sought reimbursement for the costs of Dr. Kim's independent medical examination (IME). The deputy commissioner concluded that Rife was entitled to seek an IME and ordered P.M. Lattner to reimburse Rife in the amount of $2,250 for the same. The deputy commissioner found the fee was reasonable based on Dr. Kim's opinion that the cost was "reasonable and customary in his geographic area."

P.M. Lattner filed an intra-agency appeal of the arbitration decision. The commissioner affirmed the deputy's conclusions and findings regarding the compensation to be paid for Rife's permanent partial disability. On the question of apportionment, the commissioner concluded that P.M. Lattner's theory and method of apportionment were not supported by the statutory text or the general body of workers' compensation law governing permanent partial disabilities. The commissioner reasoned that to conclude otherwise would be to compare apples and oranges. The commissioner's reasoning was persuasive, and we quote it at length:

> Not only is there no mechanism in the statute for apportioning past compensation for industrial disability against compensation for a scheduled member, . . . but the statute, as amended, does not support such an apportionment. . . .
>
> Because claimant's prior shoulder injury occurred before the legislature's 2017 overhaul of chapter 85, it was not compensated as a scheduled member. Instead, claimant's pre-existing disability was compensated under former Iowa Code section 85.34(2)(u) (now subsection (2)(v)), which is the section for unscheduled losses that provides compensation based on a reduction in earning capacity.
>
> In determining a claimant's reduction of earning capacity, functional impairment is an element to be considered, but consideration must also be given to the injured employee's age,

education, qualifications, experience, motivation, loss of earnings, severity and situs of the injury, work restrictions, inability to engage in employment for which the employee is fitted and the employer's offer of work or failure to so offer. Before the 2017 amendments, this agency stated in countless decisions over several decades that "[t]here are no weighting guidelines that indicate how each of the industrial disability factors is to be considered." *See, e.g., Logan v. ABF Freight System, Inc.*, File No. 5047979 (App. April 25, 2018).

In this case, the parties agreed upon a settlement for claimant's prior right shoulder injury. While part of the settlement was certainly for claimant's functional impairment, the agreed-upon compensation exceeded what would have been payable for claimant's functional impairment alone. In other words, the parties considered other industrial disability factors when arriving at their settlement.

Claimant's current right shoulder injury, however, is a scheduled member under the newly added Iowa Code section 85.34(2)(n). Claimant's compensation under this section is limited only to the extent of loss or permanent impairment of the shoulder itself. . . .

Thus, if defendants in this case were entitled to a credit for the entirety of their settlement, which was for industrial disability, against claimant's current scheduled member injury, they would receive an unfair excess credit for considerations and factors that are not applicable to claimant's current injury. Put differently, their credit would be for apples against an award for oranges.

I agree with the deputy commissioner that defendants could arguably be entitled to a credit based solely upon the functional impairment attributable to claimant's preexisting shoulder injury— a credit for oranges against an award for oranges.

(Citations omitted.) Like the deputy commissioner, the commissioner also concluded that if P.M. Lattner were entitled to a credit based on the prior functional impairment, it failed to carry its burden of proving the amount of the credit. P.M. Lattner "did not identify which impairment ratings the parties adopted . . . nor did they offer any evidence (expert opinions or otherwise) to shed light on which of the impairment ratings was more persuasive than the others."

On the question of reimbursement for the costs of Dr. Kim's IME, the commissioner stated that P.M. Lattner contested only that the costs of Dr. Kim's

IME included expenses for an examination of an unrelated right ankle injury. The commissioner rejected that argument. The commissioner affirmed the deputy commissioner's decision that P.M. Lattner was required to reimburse Rife $2,250 for the IME.

P.M. Lattner appealed the decision to the district court. The district court concluded that the commissioner's ruling on the apportionment issue was erroneous. In the district court's view, the commissioner failed to address and interpret the relevant statutes and the commutation settlement. The district court concluded that this legal failure was a failure "to consider all the evidence." Although the district court concluded the agency failed to "consider all the evidence," the district court remanded the case back to the agency to consider the law. Specifically, the district court remanded the case to the agency to "reevaluate . . . the intent and language of subsection 7; the full commutation statutes, caselaw, and terms." On the question of the IME, the district court concluded that Rife was not entitled to any reimbursement and reversed the agency's decision.

Rife appealed the decision of the district court, and we transferred the appeal to the court of appeals. On the apportionment issue, Rife argued that apportionment under section 85.34(7) was not applicable because the statute did not specify the method of apportionment. The court of appeals, citing our decision in *Warren Properties v. Stewart*, 864 N.W.2d 307 (Iowa 2015), rejected the argument. In its view, "the lack of express means to apportion benefits does not preclude the application of section 85.34(7)." The court of appeals concluded that pursuant to section 85.34(7), P.M. Lattner was entitled to some credit for its disability payments made under the prior commutation settlement. The court of appeals concluded that it could not determine the amount of the credit on this record, and it remanded the case to the commissioner to apportion liability

pursuant to section 85.34(7).

On the question of the IME, the court of appeals held that the district court erred in concluding that Rife was not entitled to reimbursement for the IME. The court of appeals concluded, however, that Rife could only be reimbursed for the cost of the impairment rating rather than the cost for the entire examination. The court of appeals remanded the matter to the commissioner "to determine what portion of Dr. Kim's examination related to the impairment rating of Rife's right shoulder."

II.

We granted Rife's application for further review. Iowa Code section 17A.19(10) "governs judicial review of administrative agency decisions." *Coffey v. Mid Seven Transp. Co.*, 831 N.W.2d 81, 88 (Iowa 2013). Our standard of review for the commissioner's interpretation of statutes is contingent. If "the legislature clearly vested the agency with the authority to interpret the statute at issue," we give deference to the agency's interpretation and will reverse the agency's decision only when its interpretation is "irrational, illogical, or wholly unjustifiable." *NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 36–37 (Iowa 2012) (quoting *Doe v. Iowa Dep't of Hum. Servs.*, 786 N.W.2d 853, 857 (Iowa 2010)). If the legislature did not clearly vest the agency with interpretive authority over the statute at issue, we review the agency's decision for the correction of errors at law. *Id.* at 37. We have previously concluded the legislature has not vested the workers' compensation commissioner with interpretive authority regarding Iowa Code chapter 85. *Waldinger Corp. v. Mettler*, 817 N.W.2d 1, 4–5 (Iowa 2012). Therefore, we "review the commissioner's interpretation of Iowa Code chapter 85 for correction of errors at law instead of deferring to the agency's interpretation." *Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 243 (Iowa 2018).

A.

We first address the commissioner's ruling regarding the apportionment of liability pursuant to section 85.34(7). Section 85.34(7) provides that an "employer is not liable for compensating an employee's preexisting disability that arose out of and in the course of employment from a prior injury with the employer, to the extent that the employee's preexisting disability has already been compensated." Iowa Code § 85.34(7). The legislature's stated purpose in enacting section 85.34(7) was to "prevent all double recoveries and all double reductions in workers' compensation benefits for permanent partial disability." 2004 Iowa Acts 1st Extraordinary Sess. Ch. 1001, § 20. "The general assembly intend[ed] that an employer shall fully compensate all of an injured employee's disability that is caused by work-related injuries with the employer without compensating the same disability more than once." *Id.*

This case is resolved by *Loew v. Menard, Inc.*, ___ N.W.3d ___ (Iowa 2024). In that case, we addressed the question of how the commissioner should apportion liability when compensation for the employee's first injury resulting in permanent partial disability was based on a loss of earning capacity and compensation for the second injury resulting in permanent partial disability was to be compensated based on a loss of functional impairment. *See id.* at ___. Like the commissioner and the court of appeals in this case, we concluded that offsetting an award based on functional impairment against a prior award based on loss of earning capacity was an improper comparison of apples to oranges. *See id.* at ___. Rather than comparing these incommensurables, the employer is entitled to an offset or credit for the functional impairment caused by the first injury. *See id.* at ___. Stated differently, section 85.34(7) requires that the employer can only be liable for the marginal increase in functional impairment caused by the second injury. *See id.* at ___ (concluding that employee was

entitled to compensation for the 8% marginal increase in functional impairment caused by the second injury). Distinguishing marginal increases in functional impairment caused by different injuries is a factual inquiry well within the agency's expertise. *See, e.g., Floyd v. Quaker Oats,* 646 N.W.2d 105, 110 (Iowa 2002) (discussing agency finding distinguishing permanent impairment caused by work injury and additional impairment caused by subsequent aggravation).

Although the commissioner in this case articulated the correct framework for apportioning the employer's liability for the second injury,[1] the commissioner declined to apportion liability on the ground that P.M. Lattner failed to provide evidence on the extent of the prior impairment. "When there has been a failure of a required record, we frequently must decide whether it is appropriate to remand a case in order to supply the missing record. The answer most often is no; in view of limited judicial resources, we can ordinarily accord but one trial for each controversy." *Murillo v. Blackhawk Foundry,* 571 N.W.2d 16, 19 (Iowa 1997). In administrative appeals, however, "[i]f it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the contested case proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court." Iowa Code § 17A.19(7).

"We think the record here calls for a remand for additional evidence." *Murillo,* 571 N.W.2d at 19. The application of section 85.34(7) under the

---

[1]We note that after the district court reversed the commissioner's decision in this case, the commissioner changed course and offered different interpretations of section 85.34(7) on similar apportionment questions. *See Reeves v. Plymouth Cnty. Solid Waste,* Iowa Workers' Comp. Comm'n No. 21006846.02, 2023 WL 6953980, at *28 (Oct. 16, 2023); *Brunk v. Glenwood Res. Ctr.,* Iowa Workers' Comp. Comm'n No. 19003535.02, 2023 WL 2376894, at *3–*4 (Feb. 27, 2023) (noting uncertainty in law after district court decision in this case). For the reasons expressed in *Loew* and in this opinion, we conclude the commissioner's interpretation of section 85.34(7) as expressed in this case was correct.

circumstances presented here was unclear. Under section 85.34(7), P.M. Lattner is required to compensate Rife only for the marginal increase in the functional impairment of his right shoulder caused by the 2018 injury. To ascertain that amount, it must be determined whether Dr. Kim's 19% functional impairment rating was in addition to, or inclusive of, Rife's preexisting functional impairment. P.M. Lattner should be afforded the opportunity to present evidence under the correct standard as set forth in *Loew* and this opinion. *See id.* (remanding for additional evidence after clarification of workers' compensation provision).

B.

We next address the question of whether Rife was entitled to reimbursement for the expense of Dr. Kim's IME. The deputy commissioner found Rife was entitled to reimbursement and found the fee of $2,250 was reasonable based on Dr. Kim's opinion that the cost was "reasonable and customary in his geographic area." The commissioner affirmed this finding. The district court concluded that Rife was not entitled to any reimbursement. The court of appeals concluded that the district court erred and Rife was entitled to reimbursement. The court of appeals concluded, however, that Rife was entitled to reimbursement only for the costs of the impairment rating and not for the entire examination.

We agree with the court of appeals that the district court erred in concluding Rife was not entitled to reimbursement for the cost of the IME. However, we conclude the court of appeals erred in holding that Rife was entitled to reimbursement only for the cost of the impairment rating and not the cost of the examination. "[T]he employee is entitled to the reasonable cost of the examination accompanying the physician's determination of the impairment rating, not merely the component cost of the impairment rating itself." *Mid Am.*

*Constr. LLC v. Sandlin*, ___ N.W.3d ___, ____ (Iowa 2024). The Code "provides for reimbursement of the reasonable cost of the examination to determine the impairment rating, and the examination encompasses the records review, the physical examination and testing, and a written report." *Id.* at ___; *see also* Iowa Code § 85.39(2).

We conclude the commissioner's reimbursement decision should be affirmed. The reasonableness of the fee for an IME "is to be based on the typical fee charged in the locale where the examination is performed." *Id.* at ___. "Whether the fee is reasonable is a question of fact, and the commissioner's finding of reasonableness is to be affirmed if supported by substantial evidence." *Id.* at ___. Here, the commissioner found the $2,250 fee was reasonable based on Dr. Kim's opinion that his fee was the reasonable and customary fee in the geographic area. The commissioner's finding is thus supported by substantial evidence.

### III.

For these reasons, we affirm in part and reverse in part the decision of the court of appeals. We reverse the judgment of the district court. We remand this matter to the district court with instructions to remand this matter to the workers' compensation commissioner for further proceedings.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND REVERSED IN PART; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**